(45 Misc. Rep. 97)

### DELANEY v. FLOOD.

(Supreme Court, Special Term, New York County. October, 1904.)

1. INJUNCTION—DISORDERLY HOUSE—POLICE OFFICERS.

An injunction will not be granted to restrain a police captain in New York City from posting officers in front of a hotel where liquors are sold, and which he claims is a disorderly house, though he will be restrained from interfering with customers by stating to them that the house is likely to be raided at any moment and the occupants arrested.

Action by Timothy J. Delaney against John F. Flood, captain of the Twelfth Police Precinct of the city of New York. Motion for an injunction pendente lite. Denied.

Nathan Vidaver, for plaintiff.

John J. Delany, Corp. Counsel, and James Lindsay Gordon, Asst. Corp. Counsel, for defendant.

CLARKE, J. Plaintiff alleges that he is in possession of premises No 54 Rivington street, conducting therein a hotel, for which on May 14, 1904, he secured a license under clause 1, § 11, of the liquor tax law (Laws 1896, p. 51, c. 112), that said premises contain 32 furnished rooms for lodgers, a restaurant, and a bar; that since the 2d day of June, 1904, the defendant, acting in his capacity as police captain, etc., has had stationed, and there are now stationed, on the sidewalk of the street, directly in front of the door of the premises, between the hours of 8 in the morning and 12 midnight, police officers of the city of New

York; that said police officers have repeatedly stopped both men and women who were about to enter deponent's place of business, and informed them that the hotel conducted by deponent is a disorderly place, and as such it was likely to be raided by the police department of the city of New York, and that all persons in the hotel at the time of the raid would be liable to arrest; that, in addition to the maintenance of police officers directly in front of the premises at numerous times, one of the said officers would enter the premises, and station himself in the hallway on the first floor thereof, and has stated to the men and women seeking lodging in said hotel that said hotel was a disorderly place, and that a raid by the police force might at any moment be made on said hotel, and that, in the event of a raid, all inmates of said hotel would be liable to arrest; that said statements made by said police officers had, on many occasions, the effect of inducing the men and women who came to said hotel for the purpose of renting rooms therein of seeking lodgings elsewhere. He further alleges that since May 14, 1904, the time when he acquired possession of said hotel, and up to the present time, there have been no violations of the excise law, nor any violations of any of the laws of the state, in said hotel, and that he has repeatedly requested defendant to withdraw said officers from said premises, and requested defendant that, if he discovered any violations of either the excise law or any of the statutes of the state of New York, to make such arrests as would be proper in the premises, but that said defendant has refused, and still refuses, to comply with the request of deponent; that the actions of the defendant are wrongful and oppressive, and without warrant of law, and have done incalculable harm to the business of the defendant, in this: that the profits of said hotel have decreased and diminished since said officers have been stationed thereat; that deponent has suffered great financial loss by reason of the oppression and wrongful acts of the defendant as above recited, and a continuation of said acts will result in deponent's complete financial ruin and irreparable loss. This is a motion for an injunction pendente lite enjoining and restraining defendant, the officers under his control, connected with and belonging to the Twelfth Police Precinct, his agents or servants, from maintaining an alleged post in front of and in and about plaintiff's said place of business, and also from keeping and maintaining in front of and in and about plaintiff's said place of business any of the officers of his command against the plaintiff's will, or from continuing to oppress this plaintiff, or from maliciously, oppressively, wrongfully, and unlawfully interfering with him or his business in warning customers of said hotel that said place of business was and is a disorderly house. In answer defendant alleges that said premises by common report and general knowledge throughout the precinct are conducted as a house of prostitution and assignation; upon information and belief, that plaintiff is not the owner of the business conducted in said premises, but that the business is actually conducted by one Owen J. Finnegan, who is the responsible conductor. He further alleges that he has for some time stationed officers in front of and in said premises because of numerous complaints that have been made to him that they were conducted as a house of ill fame, resorted to by men and women constantly for purposes of prostitution; that the officers sta-

tioned in front of and in said premises were directed not to interfere with any legitimate business, nor with the customers who did not violate the law, and that said officers informed deponent that they only interfered with men and women whom they saw going into said premises to the extent of informing them that the place is a house of prostitution, notorious to the community, and was liable to be raided at any time by the police.

Without specifying in detail the numerous affidavits which tend to show that there is ground for the alleged common report, at least in the past, for the reputation of the premises, and that arrests had taken place on the premises in the year 1903 for violation of the laws, it is enough to say that the captain admits posting men before and in the premises, and that these officers have told men and women whom they saw going into the building that it was a house of prostitution, and liable to be raided. Upon those admitted facts, is plaintiff entitled to the relief demanded? As pointed out by the Appellate Division in Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81:

"By section 282 of the consolidation act (Laws 1882, p. 73, c. 410) it is especially made the duty of the police force at all times of the day and night, and the members of such force are thereby empowered, to prevent crime and preserve the public peace. To that end they are authorized to observe carefully and inspect all places of business having excise or other licenses, and all gambling houses, all houses of ill fame or prostitution, and houses where common prostitutes resort or reside, and to repress and restrain all unlawful or disorderly conduct or practices therein, and to enforce and prevent violations of all laws and ordinances in force in the city of New York. That section of the statute was not original in the consolidation act passed in 1882, but it was the law of the state for many years in reference to the city of New York, and it has been continued in the charter of the greater city. Section 315, c. 466, p. 136, Laws 1901."

The Appellate Division said in People v. Herlihy, 66 App. Div. 538, 73 N. Y. Supp. 236, affirmed 170 N. Y. 584, 63 N. E. 1120:

"A person who keeps a house of ill fame or prostitution is guilty of a misdemeanor. Pen. Code, § 322. Such house is a common nuisance, and as such it was the duty of the defendant, as a captain of police in charge of the precinct stated in the indictment, to suppress and prevent the maintenance of the same. It was his duty, as such police officer, to prevent all violations of law in his precinct, and restrain the violators, so far as possible, and, if unable to prevent such violations, then to arrest the offenders, and bring them to punishment. Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81. This was the general duty resting upon him as a peace officer. But in addition to this he had a special duty with reference to houses of prostitution enjoined upon him by statute (section 315, Charter). * * * And if he willfully omitted to perform his duty as a peace officer, or the duty specifically enjoined upon him by statute, then he was guilty of a misdemeanor. Pen. Code, §§ 117, 154."

Section 37 of the liquor tax law (Laws 1900, p. 866, c. 367), provides:

"All officers authorized to make arrests in any city, town or village, and the special agents appointed under section ten of this act may in the performance of their duties enter upon any premises where the traffic in liquors is carried on or liquors are exposed for sale at any time when such premises are open."

Paragraph 7 of section 23, p. 859, of said act provides:

"No corporation, association, copartnership or person, who, as **owner or agent**, shall suffer or permit any gambling to be done in the place designated

by the liquor tax certificate as that in which the traffic in liquors is to be carried on, or in any yard, booth, garden or any other place appertaining thereto or connected therewith, or suffer or permit such premises to become disorderly, or carries on or permits to be carried on or is interested in any traffic, business or occupation, the carrying on of which is a violation of law," shall traffic in liquors.

There seems, therefore, to be abundant authority in the statutes and the cases for the captain of police taking such action as his discretion warrants for posting his officers and making his inspections. The place holds a liquor tax license. That in and of itself warrants inspection at any time. Where on the street he shall post his men for the purpose of preventing or detecting crime is a detail of police administration with which the court will not interfere. But it seems to me that, while it is his duty to suppress and restrain, that can only mean in a lawful manner. He may observe, he may arrest, he may arraign; but if he arrests the court must pass upon the facts. The court must do the suppressing. If he is to decide that a place is to be suppressed as disorderly, and acts thereon out of court, it lodges a power of oppression in his hands which this court is not willing to sanction. So far, then, as he and his officers interfered with the customers of this place by statements as to its character and threats of possible raids, he proceeds, in my judgment, without warrant of law. It is not enough that in this particular instance his motives may be proper, and the end justifiable. If such conduct were approved, any legitimate business might be ruined.

The motion will be denied so far as it seeks to obtain an injunction preventing the posting of officers and inspection of the premises, and granted so far as it relates to the interference with proposed customers by volunteered statements and threats.