PEOPLE ex rel. WOOD v. O'DONNELL et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

TAXATION—PLACE OF TAXATION OF PERSONALTY.

Under Greater New York Charter, Laws 1901, p. 385, c. 466, § 902, directing the municipal assembly to levy on and collect from the taxable property within each of the counties within the greater city, respectively, the sum necessary to pay county officers and charges, and section 894, providing that, if it shall appear to the tax commissioners that a person assessed for taxation on personal estate on the books of one borough should have been assessed on the books of another borough, they shall cause the

assessment to be made on the proper books and notice of the new assessment given to the owner, the greater city is not a single tax district, but a tax on personalty must be levied in the borough in which the owner resides.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of St. John Wood, against Frank A. O'Donnell and others, as commissioners of taxes and assessments of the city of New York, to review an assessment. From an order denying a motion to quash the writ, defendants appeal. Affirmed.

The opinion of Justice McCall in the court below is as follows:

This is a motion to quash a writ of certiorari, obtained by the relator, to review the action of the commissioners of taxes and assessments in levying what relator alleges is an illegal tax on personal property. The conceded facts are that the relator is a resident of the borough of Brooklyn, in the greater city of New York, and that the property upon which the tax is sought to be placed is located in said borough of Brooklyn; that during the year 1904 the relator received a notice from the respondents that he had been taxed on personalty alleged to be owned by him in the borough of Manhattan. On March 29, 1904, two days before the expiration of the time fixed by law wherein to apply to said board for a revision, cancellation, etc., of said tax, the relator called and notified said commissioners, at their office in the borough of Manhattan, that he was not a resident of said borough, but that he resided in the borough of Brooklyn, and that whatever personalty he had was there located, and if a tax was to be imposed he demanded that it be levied in the borough of Brooklyn, where he resided. This request was disregarded, and as originally levied in borough of Manhattan it was sought to enforce the payment of said tax. Upon this motion the respondents contended that the entire greater city is but a single tax district; that the deputy tax commissioners of the several boroughs are not independent officers, but are merely appointees of the commission which presides over the entire city, and, although separate assessment rolls are kept for the different boroughs and the relator's name was on the one for a borough in which he concededly does not reside, that notwithstanding, and inasmuch as he received the notice of the assessment, the fact of the tax being imposed in one borough while relator lived in another is a mere irregularity in procedure, not fatal to the jurisdiction exercised as shown.

I am not in consonance with the view that the so-called Greater City of New York constitutes but one tax district, recognizing the fact that there is but one board of commissioners of taxes and assessments for the entire city. Still an appreciation of the equally important fact that the several boroughs embrace within their territorial limits as many distinct counties, the support of the governments of which must be provided for as found in the charter, would incline one strongly to the belief that though the charter provided for consolidation, and also for a change in the method of collecting the taxes levied, the tax districts were not changed; and this view is strengthened on reading section 902 of charter (Laws 1901, p. 385, c. 466), which provides that "the municipal assembly * * * is directed to levy upon and collect from the taxable property within each of said counties respectively the sum or sums necessary * * * to pay * * * county officers and other county charges." If, then, the theory is tenable that the relator is amenable to this tax levied in Manhattan, because Brooklyn is an integral part of New York City, contended for as being a single tax district, we have the anomalous situation that the government of the county of New York may be supported by funds derived from taxation on property located in Kings county, to the support of the government of which it is bound by statute to respond. And what, then, of section 894 of the charter and its provisions absolutely mandatory? "If at any time prior to the first day of May in any year it shall appear to the tax commissioners that a person assessed for taxation on personal estate on the books or rolls of one borough should have been assessed therefor on the books or rolls of another borough, they

shall forthwith cause the assessment to be made on the proper books or rolls, and within five days thereafter shall cause written notice of the new assessment to be mailed," etc. "The person so notified may apply for correction on or before May 20th. * * *" What a significant bearing this action has on this question. Upon a notice from a citizen that his name appears as subject to a tax on the books of a wrong borough the commissioners must forthwith cancel said assessment—not transfer it to proper books, as might readily be provided if it was a mere irregularity of procedure—but cancel it, and "cause a new assessment to be made on the proper books." It compels written notice of the new assessment to be forwarded to the party affected, and then extends his time to have same revised, canceled, etc., from March 31st to May 20th. What is that significant of? What else does it mean but that the first tax levied was absolutely void, and why? Because it was not levied in the district where the party sought to be charged resided.

Motion denied, with costs. Settle order on notice.

E. C. Kindleberger, for appellants.

H. B. Culver, for respondent.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of the court below.