### BURNS v. McADOO et al.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

1. INJUNCTION—TRESPASS BY POLICE OFFICERS.

While a court of equity will not undertake to determine, upon conflicting evidence, whether a business is unlawful so as to justify police surveillance thereof, nevertheless police officers will be enjoined from unlawfully trespassing on premises, where it is shown by undisputed evidence that the law is not being violated, and that irreparable injury will ensue from a continuation of the trespasses.

2. SAME—EXTENT OF RELIEF.

Where plaintiff was entitled to an injunction restraining police officers from interfering with his business by remaining in and about his premises and molesting possible customers, but it did not appear that plaintiff, who was lessee of a room, had any control over the halls and doorways leading to his premises, an order enjoining defendants from remaining or stationing officers in the halls and doorways was too broad.

Ingraham and Clarke, JJ., dissenting.

Appeal from Special Term, Kings County;

Action by George L. Burns against William McAdoo and others. From an order granting a temporary injunction, defendants appeal. Affirmed.

Appeal by defendants from an order of the Special Term enjoining each of them, both individually and in his official capacity as a member of the police department of the city of New York, and the officers under their command, "from maintaining and stationing policemen or police officers within the premises leased and occupied by the plaintiff herein, at No. 1626 Broadway, in the borough of Manhattan, city of New York, and also from keeping, stationing, and maintaining within said premises, and in the halls and in the doorways leading thereto, any of the officers under the command of either of said defendants, against the will of this plaintiff, or otherwise to unlawfully oppress this plaintiff, and persons in his employ, and customers and persons desiring to do business with this plaintiff, and persons lawfully entering upon said premises leased and occupied by the plaintiff herein, or from unlawfully trespassing upon said premises."

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Terence Farley, for appellants.
Maurice Meyer, for respondent.

LAUGHLIN, J. This is a suit in equity to enjoin acts of trespass and oppression by members of the police force.

The plaintiff alleges and shows by affidavit that he is engaged in business as a teacher and instructor of a physical culture school at No. 1626 Broadway, in the city of New York, borough of Manhattan; that said premises are situated in the Twenty-Second precinct of which the

defendant Bernard Gallagher is captain; that the ground floor is occupied by a carriage manufacturer, and that the plaintiff is the sole lessee of the entire second floor of said premises about 25 feet in width by 60 feet in depth; that he has occupied said premises during the five months preceding the commencement of the action, and has employed, as superintendent and manager of said business, one Prof. William J. Lee, who is well known throughout the city of New York and other places, as being an eminent specialist in the line of physical culture; that he has, on the outside of said premises, signs announcing his business, "and in the studio which occupies the whole floor leased by the plaintiff is contained various paraphernalia for giving lessons in exercise, in calisthenics and athletic movements"; that before he leased the premises he was engaged with the Equitable Life Assurance Society, and that prior thereto he was a traveling salesman for a mercantile house in New York City; that shortly after June 25, 1905, an officer named Lohmeyer, attached to defendant Gallagher's command, called at his place and asked him and Prof. Lee and one other person present what they were doing there and asked Lee if he had a diploma to practice physical culture and "told us all, after some little further conversation, to get out of said premises, as the police department had been notified that gambling was going on in said premises; that Police Officer Lohmeyer and others have called there continuously since the last-mentioned occasion and have stationed themselves in the doorways and hallways and at the entrance to deponent's premises, and, on the premises occupied by deponent, such police officers, including Officer Lohmeyer, have at various times ordered all the persons on said premises to get out, and deponent has at various times seen Officer Lohmeyer, and other officers connected with the command of the defendant Gallagher, speak to persons desiring to enter plaintiff's premises, and inquire of them their business, and what was going on on said premises"; that daily since said occasion the defendant Gallagher has maliciously, oppressively, unlawfully, and wrongfully stationed and kept within plaintiff's place of business a number of officers under his command, and that the plaintiff has repeatedly asked said officers to depart, if they had no other business there than to watch occurrences on plaintiff's premises, and has asked them that if they saw any violations of law to make an arrest and depart, and that the officers stated and asserted that they were on the premises on orders from Gallagher for the purpose of watching and seeing that no gambling took place, and, for no other reason, that customarily during said period the officers arrived at plaintiff's place about 2 p. m. each day, except Sunday, and remained until 6 p. m.; that "some of the officers stand in the hallways of said premises and at other times station themselves on the ground floor at the door leading into said hallway, and also at the landing at the head of the stairs upon said premises occupied by the plaintiff, and have also occupied the chairs of the plaintiff in his said place of business and endeavored to interfere with plaintiff's customers, and at different times attempted to eject some of plaintiff's customers from his said premises"; that the officers have threatened persons entering the premises with arrest, and have stated to them that if they entered there they would arrest them for being in a gambling house or poolroom; that on or about July

1st and July 3d, 1905, the officers came to his premises, when Prof. Lee, one Thomas Lee, an attendant for plaintiff, and one Dickson, a customer, were present; that the officers talked in a loud tone of voice in the presence of other customers as to what was going on there, and that they said they were there to see if any gambling was taking place, and that at said time they attempted to eject the said Dickson from the premises; that the said defendant Gallagher was acting under the instructions of the defendant McAdoo; that plaintiff has notified Gallagher of all the facts stated herein, and, despite his repeated requests to Gallagher to remove the officers from the premises, Gallagher refused and asserted that he would continue to keep them there to cause plaintiff annoyance and to endeavor to restrain him from doing business, and refuses to set any limit as to the time he will keep the officers there; that the premises have never been used as a poolroom or for gambling by plaintiff, nor has he permitted them to be used as such by any of his employés or customers; that plaintiff has distributed at various times since occupying the premises, for the purpose of advertising his business, circulars containing the following:

"Physical Culture Studio. No. 1626 Broadway, New York.

"I have arranged with the eminent Professor W. J. Lee to take charge of my private studio, and respectfully solicit your patronage. For terms and further particulars kindly address me as above, or at No. 69 Stuyvesant Avenue, Brooklyn, N. Y. Also Professor Lee at above address.

"G. L. Burns."

The plaintiff also presents an affidavit of Prof. Lee to the effect that he has been teaching and demonstrating physical culture for the past ten years and has been employed by the plaintiff for the last five months; that he is an author and lecturer on physical culture, has been associated with the editor and proprietor of the Physical Culture Publishing Company, whose offices are at 29 East Twenty-Ninth street, for three years, and that he wrote an article for the New York Herald, a copy of which he makes a part of his affidavit, and which article purports to illustrate his art. The article in question appeared July 26, 1903, and has five photographs of Prof. Lee taken at different times to show his success in reducing weight by his physical culture methods. The affidavit of Prof. Lee further shows that he has known the plaintiff for five years, and is "at the present time engaged with him as manager and conducts the business for him at 1626 Broadway"; that he arrives at the place at 10 a. m., and remains there until 10 p. m., with the exception of the time he spends in securing his meals. He also corroborates plaintiff in regard to the acts of the officers upon the premises generally, and particularly as regards the incidents of July 1st and July 3d, when plaintiff claims that the officers attempted to eject his customer Dickson from the premises. He further states that Officer Lohmeyer repeatedly called at the premises prior to July 1, 1905; that he came into the office of the plaintiff and sat down and stated that he was going to sit there; that deponent on three or four occasions asked him to leave, whereupon he did leave, but that another officer came and took his place on said premises; that when Lohmeyer and the other officers first came to the premises they said that "a letter had been written to the captain, meaning the defendant Gallagher,

which had been unsigned, stating that there was going to be an alleged poolroom conducted on said premises, and that the police department suspected that such was the purpose of the plaintiff's establishment."

The affidavit of Thomas Lee, the alleged attendant of the plaintiff, substantiates the plaintiff generally as to the acts of the officers and shows that he "has heard Officer Lohmeyer order all persons out of said premises and seen him interfere with a customer or patron of plaintiff known as Mr. William Dickson"; that at different times when deponent was entering the premises he was asked his business by the officers and was followed upstairs into plaintiff's premises by them: that he has been employed as an attendant at various gymnasiums and schools for physical culture in New York City. Both he and Prof. Lee make statements in their affidavits tending to show that there was no gambling of any kind on said premises. Prof. Lee says:

"That at no time, while deponent has been on said premises, has there been any gambling of any kind, nature, or description conducted by the plaintiff herein thereon, nor is there on said premises any apparatus or paraphernalia for the conducting of a poolroom or any other gambling device."

Thomas Lee says that at no time has he "ever seen any gambling of any kind, nature, or description on said premises, and at no time has he permitted said premises to be used for any such purpose by any persons whatsoever." He was employed by the plaintiff for the past five months.

The plaintiff also presented an affidavit by the said Dickson to the effect that, some time early in June of 1905, he received a copy of the circular which plaintiff claims to have sent out to advertise his business; that in answer to it he, on July 1st, and again on July 3, 1905, called at plaintiff's place of business to see about making arrangements for a course of instruction. When he arrived there on July 1st, there were certain men there who stated they were police officers and who asked him what he wanted; that, when he told them that he wanted to see the plaintiff and Prof. Lee, they ordered him out of said premises; that Lee at that time stated to the officers the purpose and object of his (Dickson's) visit, and that the officers in return said it made no difference, and "told us all to get out, and ejected us from said premises." Deponent returned again on July 3d and was treated in a similar manner by police officers, who were on the premises at that time; that deponent never saw any gambling of any kind on said premises, and had no idea that they were used for any such purpose.

Opposed to this evidence the defendants read in opposition to the motion three short affidavits. Frederick Lohmeyer, the officer referred to, said that the records show, but does not specify what records, that at one time the building at 1626 Broadway was used as a poolroom, and that it is carried on the books of the precinct as a suspicious place. He admits of having himself visited the premises, but denies that officers were stationed at the premises to warn people either going in or coming out from the premises; "that the said premises are fitted up to some extent as a gymnasium, but that deponent on his visits has not seen any other evidence of its being a physical culture institute; and that on several occasions persons on the premises have failed to give any satisfactory reason for their being around the place." The

affidavits of Capt. Gallagher and Acting Commissioner Thomas F. McAvoy merely show that they gave no specific instructions to the officers in regard to inspecting this place. In an answering affidavit the plaintiff showed that officers under the command of the defendant Gallagher have, since the order to show cause was obtained, visited the premises and have remained there on some occasions for three hours at a time, and that they have, to deponent's knowledge, repeatedly interfered and accosted persons and patrons of deponents.

Although the moving papers are not as full and complete as they should have been, and as it would seem they might have been, yet they show that the plaintiff was lawfully in possession of the premises in question and conducting a lawful business thereon, which required no license or permit, and which he was entitled to conduct without the inspection and supervision of the police. The defendants show no justification for the unlawful trespass upon the plaintiff's rights and premises. They merely show that some records—the nature of which they do not disclose, but which we may assume were police records—show that these premises were at one time used for poolroom purposes, but they do not show as a matter of fact that they were ever used for such purposes, or that the plaintiff or any of his employés or customers ever visited the same at any time when, if ever, any unlawful business was conducted thereon. No reasonable ground is shown to justify even a suspicion that the plaintiff is conducting an illegal business. It is manifest that there is no adequate remedy at law for the ruination of a lawful business by such means and methods as appear to have been employed by the police in this case. Unless a court of equity has and exercises jurisdiction to enjoin an unlawful trespass of this nature by the police, it is within their power to levy tribute upon every lawful business, and even upon citizens at their private homes, and, if demands for tribute are not acceded to, it is within their power to ruin any lawful business and to destroy the good character and reputation of any citizen or resident of the city and his family. If the courts are powerless to afford adequate redress for such acts of oppression and violations of individual rights guarantied by the Constitution, citizens, and others entitled by treaty to the rights of citizens, will be driven to take the law in their own hands, and, if unable to defend their possessions against unlawful trespasses by the police, they may resort to the use of firearms and other means. It is therefore, in my opinion, upon grounds of public policy and in the interests of law and order, as well as for the protection of sacred individual rights guarantied by the Constitution, for which there is no other adequate remedy, advisable that in a proper case an injunction should issue to enjoin a malicious or unlawful trespass by police officers which they threaten to continue. Of course, the courts may not, and will not, interfere to prevent arrests or the execution and enforcement of the criminal law, and, so long as the police authorities keep within their proper spheres and lines of duty, they cannot be, and will not be, embarrassed by the courts. It is only in those cases where the police officers are acting without authority, and are either ignorantly, willfully, or maliciously committing or threatening to commit illegal acts against the rights of a citizen to his irreparable damage, for which there is no

other adequate remedy, that an injunction should ever be issued. When, however, the courts are appealed to by a law-abiding citizen, or one entitled to the rights of a citizen, conducting a lawful business which is invaded by the police, who persist in remaining indefinitely, and show no justification therefor, as in this case, an injunction may safely be issued, and there is little danger that the precedent will render it difficult for the police officers to enforce the law and to perform their full duties under the law. A court of equity should not undertake to determine upon conflicting evidence whether or not a crime has been committed or a business is unlawful; but I see no impropriety in enjoining an unlawful trespass by the police, which is threatened to be continuous in its nature and will do irreparable damage, where the evidence is undisputed that the law is not being violated, and no unlawful business is being conducted on the premises. This is a well-settled ground of equity jurisdiction as to trespasses of individuals, and, when the trespass by police officers is clearly unlawful and will produce irreparable damage, I see no good reason why it should not be exercised as to them.

The case of Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, is cited and relied upon by the appellant as holding that equity is without jurisdiction to issue an injunction against police officers. I agree with the comments upon that decision by Presiding Justice O'Brien, in Stevens v. McAdoo et al. (decided herewith) 98 N. Y. Supp. 553, and by Mr. Justice Patterson, in McGorie v. McAdoo (also decided herewith) 99 N. Y. Supp. 47, and, as it is clearly distinguished by them, it is unnecessary that the grounds of distinguishment should be restated.

The order granted in this case is, however, too broad. It enjoins the defendants from stationing and maintaining police officers in the halls and doorways leading to the premises occupied by the plaintiff. It does not appear that the plaintiff had any rights with respect to the halls or doorways other than those on the second floor, except for access by himself and customers; and it does not appear but that the defendants were permitted by those having jurisdiction over the halls and doorways to station officers therein.

The injunction order should therefore be modified, by striking from the enjoining clause thereof the words "and in the halls and doorways leading thereto," and, as thus modified, it should be affirmed, without costs.

O'BRIEN, P. J., and PATTERSON, J., concur.

INGRAHAM, J. (dissenting). The relief demanded in this case is for a perpetual injunction "enjoining and restraining the defendants, the officers under their and each of their commands and their and each of their agents and servants, from maintaining such alleged post within the plaintiff's place of business and upon the plaintiff's premises, to wit, No. 1626 Broadway, in the borough of Manhattan, city of New York, and also from keeping, stationing and maintaining within the plaintiff's said place of business and upon the said premises any of his officers, under their and each of their commands, against plaintiff's will, or to otherwise continue to oppress, harass and annoy this

plaintiff, and trespass upon the said premises occupied by him"; and to recover the sum of $1,000 damages. Upon this complaint, an injunction during the pendency of the action was granted, after notice to the defendants, by which the defendants and each of them, individually, and as police commissioner of the city of New York, and as captain of the Twenty-Second police precinct, in the police department of the city of New York, respectively, the officers under the command of each of said defendants, their and each of their agents, servants, and employés, "are enjoined and restrained from maintaining and stationing policemen or police officers within the premises leased and occupied by the plaintiff herein, at No. 1626 Broadway, in the borough of Manhattan, city of New York, and also from keeping, stationing, and maintaining within the said premises, and in the halls and in the doorways leading thereto, any of the officers under the command of either of said defendants, against the will of this plaintiff, or otherwise to unlawfully oppress this plaintiff, and persons lawfully entering upon said premises leased and occupied by the plaintiff herein, or from unlawfully trespassing upon said premises."

Temporary injunctions are regulated by the Code, and to justify a temporary injunction in this case it must appear from the complaint that the plaintiff "demands and is entitled to a judgment against the defendant, restraning the commission or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury to the plaintiff." Section 603, Code Civ. Proc. To justify the court's granting a temporary injunction, therefore, it must appear from the complaint that the plaintiff would be entitled to a judgment permanently enjoining the defendants from doing the acts complained of. The defendants are police officers, charged with the duty of enforcing the law, preventing the commission of crime, and arresting those who have violated the law. In the case of Stevens v. McAdoo (not yet officially reported) 98 N. Y. Supp. 553, I stated the reasons why, in my opinion, a court of equity has no jurisdiction to grant an injunction, and merely wish to state a few additional considerations in support of the view there expressed. The plaintiff alleges that he has not committed a crime, and that the business which he conducts upon the premises described in the complaint is lawful. Based upon that allegation, he asks that the police be restrained from visiting his premises or interfering with his customers. The plaintiff's right to relief is therefore based upon the allegation that the business which he conducts is a lawful business, and that he has not committed a crime. He furnishes no assurance that the place will not in the future be used for criminal purposes, and, if he obtains the permanent injunction asked for, he will be at liberty to conduct any business on these premises free from police interference. Is this a question of equitable cognizance? The police are further enjoined from unlawfully oppressing the plaintiff and persons lawfully entering the premises leased and occupied by the plaintiff, or from unlawfully trespassing upon said premises. It does not appear who are to determine what is lawful oppression and what is unlawful oppression, or what is lawful or unlawful trespass. The court is authorized to enjoin the commission or continuance of an act by the defendants.

It is, I think, for the court to determine what acts are unlawful, and then restrain the defendants from doing the unlawful acts. The whole foundation for the claim that a court of equity should interfere is necessarily based upon the statement of the plaintiff that he is innocent of any criminal act, and that the business which he carries on is not prohibited by law; and on that allegation the police officers are restrained from interfering with him in the conduct of this business, or otherwise unlawfully oppressing the plaintiff and persons in his employ and customers and persons desiring to do business with the plaintiff. The question is whether this is a case of equitable cognizance, and that was the precise question presented to the Court of Appeals in Davis v. American Society, etc., et al., 75 N. Y. 362. In that case, the president of the defendant went to the plaintiffs' place of business and announced to their employés that they must discontinue slaughtering hogs by the methods then used, and thereupon arrested one of the plaintiffs and one of their employés for alleged cruelty to animals, and threatened that he would return in one week, and, if he then found the plaintiffs or others carrying on said business in the same way, he would arrest all persons engaged in it and stop the business as often as he found the plaintiffs conducting it in that way. Upon the trial the plaintiffs gave positive evidence tending to show that they did not practice cruelty upon the hogs slaughtered, and that they would be damaged by the interference of the defendants; but the court there expressly held that the case made by the pleadings and proof was not one of equitable cognizance. The court refused to determine whether the plaintiffs were, as matter of fact, guilty of violating the law, but determined the question solely upon the ground that in such a case it was not one of equitable cognizance.

The plaintiff claims in this case that the police officers were guilty of a trespass upon his property. But, if so, he has his remedy by an action for damages against all of those who are guilty of or responsible for the trespass, and the plaintiff in the complaint asks for damages for what is claimed to be an illegal and unlawful trespass. Where the acts complained of are committed by a police officer, engaged in the performance of his duty in the suppression of crime, equity has no jurisdiction to determine the question as to whether or not a crime was committed, or whether or not the business claimed to be criminal should be supervised or oppressed by the police. If the defendants, as police officers, can be thus restrained from supervising the plaintiff's business and investigating the question as to whether crime has or has not been committed upon the premises, it must be because a court of equity has power to determine whether or not a person has or has not been guilty of a crime and is subject to arrest, and it is that question which a court of equity has no jurisdiction to determine. As I am convinced that the complaint states no cause of action, and that the plaintiff cannot upon the trial succeed in obtaining an injunction, the court has no power, under the provisions of the Code to which attention has been called, to grant an injunction pending the final judgment.

I think the order appealed from should be reversed, and the motion for an injunction denied.

CLARKE, J. (dissenting). The injunction in Delaney v. Flood, 45 Misc. Rep. 97, 91 N. Y. Supp. 672, affirmed 105 App. Div. 642, 94 N. Y. Supp. 1143, and reversed 183 N. Y. 323, 76 N. E. 209, was issued by me when sitting at the Special Term. In view of the discussion which that case has had, it is important to consider precisely what was before the Court of Appeals and what that court decided. In the opinion below it was said, at page 101 of 45 Misc. Rep. page 675 of 91 N. Y. Supp.:

"Where on the street he [the police captain] shall post his men for the purpose of preventing or detecting crime is a detail of police administration with which the court will not interfere. But it seems to me that, while it is his duty to suppress and restrain, that can only mean in a lawful manner. He may observe, he may arrest, he may arraign, but, if he arrests, the court must pass upon the facts. The court must do the suppressing. If he is to decide that a place is to be suppressed as disorderly, and acts thereon out of court, it lodges a power of oppression in his hands which this court is not willing to sanction. So far, then, as he and his officers interfered with the customers of this place by statements as to its character and threats of possible raids, he proceeds in my judgment without warrant of law. It is not enough that in this particular instance his motives may be proper and the end justifiable. If such conduct were approved, any legitimate business might be ruined. The motion will be denied so far as it seeks to obtain an injunction preventing the posting of officers and inspection of the premises, and granted so far as it relates to the interference with proposed customers by volunteered statements and threats."

The injunction order restrained the defendant and all officers or agents under his control "from in any manner stopping any persons who may desire to enter the premises known as No. 54 Rivington street * * * or voluntarily informing them or any person that the hotel conducted therein is a disorderly place, or that it is likely to be raided by the police department, * * * or that, if a raid should be made upon said premises, any person found therein at the time would be liable to arrest, or by interfering in any other way by voluntary statements as to the character of said premises, or threats of possible raids to be made in or upon them, or by interfering with any person they may see going into said premises, or by informing any person they may see going into said premises, or any person in or upon said premises, that the said premises is a house of prostitution or notorious in the community, or is liable to be raided, or in any way interfering with said premises by voluntary statements as to its character or possible raids"—that is, the order did not enjoin the police from inspecting the premises, from posting officers in or around or in front of it, or from making arrests therein or raids thereon. It did not even restrain them from answering inquiries as to the character of the place. All it did do was to restrain the police officers from volunteering statements in regard to the premises. In other words, the injunction sought only to restrain the destruction of a business by volunteered statements tending to scare customers; the court saying: "If such conduct were approved, any legitimate business might be ruined." And it was this order that the Court of Appeals reversed, saying: "The whole subject may be briefly summed up in the statement that we see nothing in the case at bar to take it out of the ordinary rule that equity will not interfere to prevent the enforcement of the criminal law"—and answer-

ed the certified question, "Will equity intervene to restrain such acts?" in the negative.

Feeling that the Court of Appeals has definitely decided the question in a case in which I wrote in the line used by Mr. Justice LAUGHLIN in his opinion herein, and having been taught that the Appellate Division should not attempt to reverse the Court of Appeals, and that it is not even safe to attempt to distinguish, I dissent from the conclusion of my Brethren, and think that the order appealed from should be reversed, with costs.