Spiegel, J.
The plaintiff has filed a petition in this court, alleging the official character of the defendants above named, and that she is a resident of Cincinnati, engaged in business here, in the usual course and conduct of which sundry persons call at her said place of business; that the .aforesaid defendants, in their official capacity, have conspired together to injure her in her business and, in pursuance of said conspiracy, stationed on March 16th, 1912, a uniformed police officer in her place of business with instractions to interrogate persons visiting her place of business and otherwise interfering with the conduct of said business, all of which was done without invitation of plaintiff, and was without authority or warrant of law, and in violation of her constitutional rights to conduct her business; that she requested the defendants to withdraw the officer from her place of business *473 and requested the officer to leave it, all of which was. refused, whereupon she, in order to compel the officer to leave her premises, was compelled to close her place of business, but that the officer then proceeded to stand and patrol, in front of the door of her place of business; that she reopened her business on March 18th, 1912, but that the officer again stationed himself therein, and that ■ the defendants threaten to continue him there indefinitely; that thereby the defendants, in violation of plaintiff’s legal rights, have assumed to exercise arbitrary and autocratic authority without warrant of law, and will thereby imperil and destroy her said business to her great and irreparable injury, and that she is without adequate remedy at law. Upon this state of facts plaintiff prays that a temporary, and upon final hearing, a permanent restraining order may issue out of chancery, restraining each of said defendants, their agents' or servants, from in any wise intimidating, molesting or interfering with plaintiff in her said business, in any of the ways alleged in her petition.
A number of other petitions, containing similar allegations," were filed in this court. No answer was filed to any of them.
The court did not grant a temporary restraining order, but set this case for final hearing on the day following.
Upon the hearing the following state of facts developed: The 79th General Assembly passed an act (Yol. 102 Ohio Laws, page 469), a similar ordinance of the city of Cincinnati having been declared invalid, that no person, firm or corporation except banks and building and loan associations shall engage or continue in the business of making loans upon chattels or personal property of any kind whatsoever or of purchasing or making loans upon salaries or wage earnings without first having obtained a license so to do from the Secretary of State. The act further provides for the details of such borrowing and lending, interest not to be charged in exeess of 8 per cent, per a.nnnm| and a fee not to exceed 10 per cent, of the sum borrowed to be charged for examination, collection and all other charges. The violation of a provision of this act, or the carrying on of the business without a license, entails a fine of .not less thán $50 nor more than $200, for the first offense, and not less" than a fine of *474 $200 or more than $500, and a revocation of the license to do business for the second offense.
Where usurious interest has been charged, this act adopts the only law upon our statute books upon the subject of usury (Section 8300, Revised Statutes), namely, that the usurious payments shall be credited on account of the principal, or may be recovered in a civil suit, and no judgment be rendered against the borrower in excess of the principal borrowed and still due.
The mayor testified that numerous lenders of money had refused to comply with the new act, that the matter had become a crying evil, and that he believed, that in the exercise of his functions as chief executive, exercising his discretion, the power was vested in him to do what the petition charges him with doing. He admitted that the petition stated the facts correctly, and that he had no knowledge that the plaintiff violated the act just quoted, but that he intended to obtain the evidence through the police officers, whom he had stationed in the different loan offices, and ordered to take the names of the visitors, and interrogate them concerning the purpose of their visits.. That in some instances he had withdrawn the officers, when the lenders permitted his experts to examine their books and records, to determine whether they had complied with the law; that in the case at bar, however, he had no knowledge whether any offer to permit such examination had been made by the plaintiff or not.
The plaintiff testified to the facts as stated in her petition, which are not disputed, that she was not engaged in the businéss of loaning money upon chattels or other personal property, nor in purchasing, or making loans on salaries, but that she was a note broker, taking notes only, charging 10 per cent, per month interest, but that her losses about equalized her income to a 6 per cent, per annum basis.
Her counsel, Mr. Bentham, testified that on behalf of his client, the plaintiff, he offered permission to the director of public safety to make an examination of her books and records, in order to substantiate her statements as to her business, that the officer might be withdrawn, but that his offer was not accepted, and the officer remained.
*475 That is the state of facts developed on the trial.
Two questions present themselves to the court: First, has the mayor, and with him, his subordinate officers, overstepped the powers vested in him; and, second, if so, is this a ease where the duty is oast upon a court of equity to interfere ?
These questions are not new, and have had the attention of both the law and equity courts. Judge Story, in his work on Equity Jurisprudence, lays down this rule of guidance for equity courts (Vol. 2, page 263):
“It may be remarked in conclusion upon the subject of special injunctions, that courts of equity constantly decline to- lay down any rule which shall limit their power and discretion -as to the particular cases in which such injunctions shall be granted or withheld. And there is wisdom in this course; for it is improbable to foresee all the exigencies of society which may require their aid and assistance to protect rights or redress wrongs. The jurisdiction of these courts thus operating by way of special injunction is manifestly indispensable for the purposes of social justice in .a great variety of cases, and therefore should be fostered and upheld by a steady confidence. At the same time, it must be admitted that the exercise of it is attended with ho small danger both from its summary action and its liability to abuse. It ought, therefore, to be guarded with extreme caution and applied only in very clear cases; otherwise, instead of becoming an instrument to promote the public as well as private welfare, it may become a means of extensive and perhaps irreparable injustice.”
And on page 204, quoting Mr. Justin Baldwin in Bonaparte v. Camden & Amboy R. R. Co. (1 Baldwin’s Cir. R., page 218), the following rule' is laid down:
“There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing an injunction. It is the strong arm of equity that never ought to be extended unless to cases of great injury, where courts of law can not afford an adequate or commensurate remedy in damages. The right must be clear, the' injury impending or threatened, so as to be averted only by the protecting preventive process of injunction. But that will not be awarded in doubtful cases, or new ones not coming within well-established principles; for if it issues erroneously, an irreparable injury is in *476 flicted for which there can be no redress, it being the act of a court, not of the party who prays for it. It will be refused till the courts are satisfied that the case before them is of a right about to be destroyed, irreparably injured or great and lasting injury about to be done by an illegal act. In such a case, the court owes it to its suitors and its own principles, to administer the only remedy which the law allows to prevent the commission of such act. We know of no rule which excludes from this process any person over whom the court has jurisdiction on account of the character or capacity in which he acts, although it is conferred upon him by a law of a state or of Congress. ’ ’
Bearing these rules in mind, and especially the rule "that an injunction will not be awarded in doubtful cases, or new ones not coming within well-established principles,” let me examine the legal question involved. It is a well-established principle of equity that courts of equity have no criminal jurisdiction, and will, therefore, not interfere by injunction or otherwise, to stay proceedings in any criminal matter. It is urged that the case before me falls under this rule. The evidence, however, shows that the plaintiff, while transgressing the law which makes the legal form of interest in Ohio 6 and 8 per cent, per annum, for the transgression of which a civil remedy is given by our statutes, has not been guilty of a crime, and has not violated the provisions .of the act of 1911, for she does not loan on chattel property or salaries. Where, then, is there any proceeding in any criminal matter? And; if not, by what'authority does a police officer take possession of her place of business, or the corridor in front thereof? Counsel for the city cites to me the case of Delaney v. Flood, 183 N. Y. R., page 323, wherein the Court of Appeals of New York holds that equity will not interfere to restrain police authorities from stationing officers outside a place having a liquor tax certificate, when such authorities suspect that place of being conducted as a disorderly house, and from notifying customers who are in the place and those who are about to enter the same that it is a disorderly house which is likely to be raided at any moment, and that those who are on the premises at the time of such raid, are liable to arrest, and that the proprietor of the place, if oppressed or injured by any unlawful act of the authorities, may invoke Section 556 of *477 the New York Penal Code, or he may maintain an action of law for damages.
The city solicitor cites this isolated case as an authority for his claim that _ the mayor has the power which he exercised in the case at bar, and the plaintiff’s only recourse is an action at law for damages, no penal action being provided in our state. Let us hear what the New York court says in its opinion (page 329): ' ’
"Such a situation as is presented in the case at bar is' One which, in its very nature, can not be adequately dealt with by a court’ of equity. What might be a trespass at one instant of time may be a perfectly justifiable and necessary act at another. Here lies the fundamental distinction between the case at bar, and that class of cases in which equity assumes jurisdiction to restrain trespasses that are continuous or permanent in their nature, and where such relief is necessary to obviate multiplicity of actions at law and to prevent continuity-of wrong.”
And that is the distinction between the ease before me and the case cited. -Here are continuous trespasses,- involving -civil rights and property rights, none in obedience to the criminal law, or in furtherance of criminal procedure. It is an old rule of equity jurisdiction that its aid will be extended to prevent continuous trespasses, where, to obtain relief at law, a multiplicity of actions ' would become necessary. There the remedy at law would not be adequate, and the injuries sustained, before even inadequate relief at law could be obtained, would become irreparable. This has also been recognized in New York, where in the appellate division of the Supreme Court of said city in Burns v. McAdoo, 113 App. Div., 165, McGorie v. McAdoo, Id., 271, and Hagan v. McAdoo, Id., 509, the decision in Delaney v. Flood has not been followed, but distinguished upon the ground that it has no application to cases where the police are not engaged in the enforcement of the criminal law but have gone outside the law and procedure and become common trespassers, and the court 'allowed injunction against the illegal actions of the police authorities. In accordance with what I have said, the case before me is, therefore, one where it becomes the duty of a court of equity *478 to lend its aid to a petitioner where personal rights as well as property rights are claimed to have been invaded by a public official. In further support hereof, T cite Judge Story (Equity Jurisprudence, Vol. 1, p. —):
"The question has been made, how far a court of equity has jurisdiction to interfere in cases of public functionaries who are exercising special public trusts or functions. As to this the established doctrine now is that so long as those functionaries strictly confine themselves within the exercise of those duties which are confided to them* by the law, this court will not interfere. The court will not interfere to see whether any alteration or regulation which they may direct is good or bad; but if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them., this court no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority.”
The facts before me, undisputed, clearly show an invasion both of the plaintiff’s property rights as well as civil rights. The Bill of Rights, an integral part of the Constitution of our state, as well as the Bill of Rights of every state of our Union, contains as the fundamental principle of our civic liberties, certain provisions. Sections 1 and 14 of our Bill of Rights read as follows:
“Sec. 1. All men are, by, nature, free-and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety.”
“See. 14. The right of the people to be.secure in their persions, houses, papers and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, blit upon probable cause, supported by oath of affirmation, particularly describing the place to be searched and the person and things to be seized. ”
The city solicitor enlarges upon the evil, which the mayor is endeavoring to eradicate. Granted, but, nevertheless, has the Machiavellian rule of statesmanship that the end justifies the means, whether legal or illegal, become a maxim of our juris *479 prudence? I hope not. And I can not state the modern rule of law more clearly than was done by Justice Wm. J. Gaynor. the present mayor of the city of New York, in Cullen v. Bourke, 98 N. Y. Suppl., page 1085 (Supreme Court Reports of the city of New York), the syllabus of the ease reading as follows:
“Where a captain of police for several days kept policemen stationed in plaintiff’s store, and caused a patrol wagon to stand in front, and to be driven up and down, with a loud ringing of the bell, and policemen on the outside called out to those offering to enter that it was a suspected pool room and they might be arrested if they entered, and no arrests were made or warrant issued, a permanent injunction will issue to restrain such trespass.”
And, in rendering the decision, Judge Gaynor laid down the rule as follows:
"It is said that the conduct of this defendant (the police captain), .arises from his virtuous zeal against the injurious vice of betting on horse races in private. He seems to be wholly unaware, and not informed by his official superiors,, that the vice of arbitrary power which he indulges in is a far worse vice,, and far more dangerous to society and to our system of government, than the vice of betting. It brings in its train a horde of vices, and especially the despicable vices of oppression, extortion and blackmail. If this captain of police is to be permitted to go on doing at will what he has done to this plaintiff, he can extort money throughout his precinct, and get rieh thereby. ju'd as police officials have done in the past in the city of New York, as we all know, for the proof of it has been matter of public record for several years. The safety and morals of the community require that all public officials should respect the law, and keep within the law prescribing and limiting their powers. The only way to preserve law and order in the community, and administer the criminal law, is the way prescribed by the law.
"It may be that this plaintiff is addicted to the vice of betting on horse races, a vice publicly practiced on five or six race tracks within the limits of the city of New York, and that he allows such betting to be privately practiced on his premises. If so, the way of the law toward him is perfectly plain. It is also effective. The way and the command of the law is that evidence of the fact be first obtained, and that thereupon he be arrested, convicted and imprisoned. Such a course would beget a wholesome respect and fear of the law, and even a few convictions *480 would be effective to lessen the number of secret betting places; whereas lawless spectacular raids not only degrade the law but do no' good. To obtain such evidence the police force has a detective or secret service force.
“If it be asked,- ‘what is to be done, if no evidence can be obtained?’ the answer of the law is emphatic, ‘do nothing.’ The law does not permit'even a murderer to be molested without evidence. The meaning of free government is that no one may be molested or arrested. except in the way prescribed by law. Upon this alone, does free government rest. This is well understood everywhere outside of the city of New York except in archaic despotisms such as Russia. Where officials do as they like, free government does not exist. Ours is a government of law, -not of men. Russia is a government of men, not'of laws.”
A permanent restraining order, in accordance with the prayer of the petition, may be taken against the defendants;
Note. — Since the decision of the case, the following entry, agreed to >by both the city solicitor and counsel for plaintiff, has -been entered on the court records:
“ This cause coming on this day to be heard upon the petition of .the plaintiff, the evidence and the arguments of counsel; on consideration whereof the court finds the equities .of the case are in favor of the plaintiff. . .
“It is, therefore,_ considered and "decreed that.the defendants, and each of them, are hereby perpetually enjoined from stationing in,, the plaintiff ’s place of business uniformed police officers of the city, of Cincinnati and from trespassing on said premises, and from preventing,, or .attempting to prevent persons visiting her place of business. . ...
“It is further considered that plaintiff recover from the defendants her costs herein expended, taxed at $-r.”