Complainant's bill seeks injunction against the police authorities of the city of Trenton to restrain them from seizing and confiscating certain machines owned by complainant and leased to various retail merchants in Trenton. In addition to the affidavits, one of the machines and its operation was demonstrated to the court, by consent of counsel on both sides.
The machine in question, known as "Jennings Legal Mint Salesman," is an ingeniously conceived variation of the usual automatic vending machine. Upon the deposit of a nickel in the slot and the operation of a lever, the machine discharges a package of mint confections of a kind and size universally sold at retail stores at the price of five cents. This happens on each operation of the machine. On some, but not all, operations of the machine, there is discharged, in addition to the package of mint, one or more "premium checks" or tokens, each of which is redeemable in merchandise of the retail value of five cents, from the general stock of the merchant, who is the lessee of the particular machine. The number of these premium checks discharged on each operation varies from none at all to six (or, perhaps, ten). The machine is so devised that an indicator tells a prospective operator, prior to his depositing his coin, just how many premium checks, if any, will be discharged in addition to the mint, on that operation. This numerical indicator appears on the machine as a part of a sign or inscription which says, "for five cents you receive a package of confection and ( ) premium checks" (the parenthesis representing an aperture through which the variable number on the indicator appears). The prospective customer knows, therefore, in advance of his operation, just what he will get for his five cents on that operation; he does not know, however, what number will appear immediately after that operation, indicating the premiums he will get if he operates a second time.
The confiscation of machines and interference with complainant's business therein is admitted by defendants, and justified as a part of their duty in the enforcement of the *Page 188 
law. It is contended that the operation of the machines is in violation of section 65b of the Crimes act (2 Comp. Stat. p.1767), which reads:
"All playing for money or other valuable thing, with any slot machine or device in the nature of a slot machine, or with any other instrument, engine, apparatus or device, having one or more figure or figures, number or numbers thereon, shall be a misdemeanor."
This is the only issue raised in the argument, and the question of the right of seizure and confiscation need not be considered, since, obviously, the machines are intended to do what they in fact do, and, if they violate the statute, complainant has no standing to ask the aid of this court.
The disputed question, therefore, is whether or not the machine is what is commonly termed a gambling device? Does the element of chance enter into the determination of what the customer gets in return for what he pays? Substantially the same question, in reference to the same or similar machines, has been litigated in a number of other jurisdictions — in many instances so recently that the decisions have not yet been officially reported. The weight of authority is that the machine is a gambling device, and I concur in this view.
It is true that a single operation of the machine, considered separately as a single completed act, contains no element of chance. The machine offers a certain specified and definite return to the prospective customer, and makes delivery thereof when the offer is accepted by the customer depositing his coin and operating the lever. If each customer were limited to a single operation (omitting consideration of collusion or combination of two or more customers), the machine could not be deemed a gambling device. The element of chance enters into the matter only with regard to the number of premium tokens which the machine, after the completion of the first operation, will offer for delivery (and deliver) on the next operation.
Complainant argues that the machine must needs be considered solely from the standpoint of a single separate operation; *Page 189 
that no customer has any right to a second operation, or to continue to operate it. It may well be that the customer has no such definite, technical, legal right; doubtless, as a matter of law, the shopkeeper would have a lawful right to refuse to permit a customer to operate the machine a second time in succession, just as he might lawfully refuse to sell a loaf of bread or a cigar to an intending purchaser. But it is not pretended that any shopkeeper having one of these machines ever has refused to permit a second successive operation, or is ever likely so to do. The machine itself bears no announcement of any such limitation, and the only reason which can be conceived for the devising and manufacture of such a machine is that the lure of the chance of gains on a second operation will induce, or help to induce, the first operation.
The customer may have no definite legal right to continue to operate, but, as a practical matter, he has such right under the sanction of common usage and custom. No one would ever think of attempting to displace a customer at one of the ordinary chocolate or chewing gum vending machines until such customer has completed his intended purchases. A customer in a retail store is by common usage conceded the "right" to continue to make additional purchases from the salesman who is waiting on him.
Suppose a customer of one of the machines in question, having once operated the machine, receiving only the package of mint and no premium checks, sees that if he operates it again he will get five or ten premium checks. No shopkeeper, unless intent on commercial suicide, would conceivably refuse to permit him to operate it a second time, and any bystander who attempted to displace the first customer would inevitably bring on a breach of the peace.
It is also argued by complainant that the machine is not a gambling device, because there is no possibility of loss to the customer; because for each nickel deposited he invariably receives his five-cent package of mints, whether he receives any premium checks or not. This contention is not sound. The statute makes no such differentiation. It is just as *Page 190 
much playing for valuable things (premium checks) whether the candy is delivered or not; the difference is in degree, but not in kind.
The maintenance of such machines in operation is unlawful and against public policy, and the owners leasing such machines for operation are not entitled to injunction restraining seizure and confiscation thereof.
The preliminary injunction will be denied and the interim
restraint dissolved.