This is a bill for an injunction to restrain the prosecutor of the pleas of Hudson county from destroying certain vending machines, under the Criminal Procedure act. Comp. Stat. p. 1875
§ 168.
The defendant, as the prosecuting officer of Hudson county, has seized a large number of machines that had been placed by the complainant in a warehouse in Jersey City, upon the ground that the same were intended to be used for gambling purposes within the intent and meaning of the statute mentioned. Upon his declaration that he intended to destroy them, a restraining order was granted to prevent the irremediable damage that would thereupon have fallen on the complainant if the prosecutor had exceeded his authority. The complainants manufacture, or have manufactured for them, machines for the vending of chewing-gum, or other such commodities, which they lease out to shopkeepers for the purpose of selling gum, c., to the latter's customers. Those in question have somewhat the appearance of ordinary cash registers such as are used in small stores. On the front of the machine, and in a position such as to almost certainly arrest the attention of a prospective customer, appears the legend "For 5c. you receive a package of mintgum and ( ) premium checks." In the place indicated by the parentheses there is a glass-covered opening in which there appears sometimes the word "No" and at other times a numeral, which is always an even *Page 578 
number, and varies from 2 to 20. The customer inserts a nickel in a slot provided for that purpose and operates a lever which causes a spinning of wheels that deposits in an aperture a package of the article vended, where the customer can conveniently take possession of it. This procedure is always repeated whenever the machine is operated, after being unlocked by the introduction of the coin mentioned, but only when a coin is used. At the completion of the operation the machine again stands in the same condition, to all outward appearances, as it did before the nickel was introduced into it. However, the word "No" may appear again, but, on the other hand, there may be presented in the glass-covered opening a numeral which indicates that upon the next operation of the machine with a nickel there will be returned or delivered to the customer not only a package of the commodity sold, but, in addition thereto, a number of metallic discs corresponding to the numeral just mentioned. These discs are, in shape and size, the exact counterpart of a five-cent piece except that through the center of each one there is cut a round hole. Now, the customer, supplied with two or more such discs, is at liberty to purchase any article sold in the store where the machine is displayed, credit being given to the extent of five cents for each disc so won. But if he does not choose to put such discs to that use, he may in place thereof deposit them one by one back into the same machine from which they came, or any other similar one, in lieu of a nickel. If this be done, the operation of the machine and the result thereof are precisely the same as if a coin were used, except that a bar, operated whenever the lever is pulled, is thrust forward so as to pierce the hole in the center of the disc and thereby prevent the actuation of the machinery that deposits the commodity sold, but permits the revolving of the other machinery so as to make it a matter of chance whether the word "No" will next make its appearance or a numeral instead. So, that, while a package of gum or other article is always secured when a nickel is placed in the appropriate slot, there is never any such sale when the disc is substituted for the nickel. In the powerful argument made by counsel *Page 579 
for the complainants, great stress was laid upon the fact that the one operating the machine always knows, in advance of the operation, exactly what he will receive for the coin or the disc that he places in the slot. This, it is said, eliminates all element of chance and the transaction becomes a bona fide
matter of barter or sale in every instance, and that in each of the constituent acts, whether they be 1, 10, 15, or any other number, cannot become illegal if each one is, in itself, no transgression of the law. I think, nevertheless, as Vice-Chancellor Buchanan held in Pure Mint Co. v. Le Barre,2 N.J. Adv. Rep. 1168, not yet officially reported (96 N.J. Eq. 186), that there can be no question that a machine designed as above indicated is a gambling device within the meaning of the statute. It is clear to me that the underlying philosophy of these instruments is to take advantage of the cupidity of human nature and the gambling instinct so prevalent, else, why make the so-called premium checks in the form and size of the coin adapted to be used in its operation? It is also significant that the discs are perforated in the manner I have described so that when reintroduced into the aperture, provided for that purpose, no longer does the operator receive the commodity vended but may receive more of the discs having a two-fold value, either to be used in lieu of money for the purchase of goods or to again try fortune for still more premium checks. In the opinion just cited, the argument as to the right of any individual to continue to play the machine has been sufficiently answered.
I have read the opinion of Mr. Justice Benedict, of the New York supreme court, in Byk v. Enright, but I am not only at variance with his reasoning (he cites no authorities except to condemn them), but, in addition, his decision has been appealed and his injunction against the police stayed by the appellate division. Nor do I feel that I should permit my decision to be forced by that in People v. Hirt, in some Ohio court, orYale Wonder Clock v. Surman (193 N.Y. 632, affirming120 App. Div. 904, without opinion).
It is also argued that there is no difference between the plan underlying the use of these machines and the practice *Page 580 
of so many shopkeepers in giving premium coupons or additional merchandise to purchasers to attract and hold customers. Of course, that is an entirely different thing, because the purchaser always knows in advance by a simple arithmetical process how much he will receive in return for any given amount of money that he intends to lay out in purchases. There is not the slightest semblance of a chance. While here, if a person starts with fifty cents, he knows before spending any part of that amount what he will receive for the first nickel, but when the tenth nickel has been used up he may have nothing to show for his outlay except ten packages of gum, or, if he is fortunate, if luck is with him, he may, at the end, in addition to the gum, find himself with any even number of discs not exceeding two hundred in number. This is the very vice described in State v.Shorts, 32 N.J. Law 398. As Chief-Justice Beasley there pointed out, while the odds against the winning of a prize was great, "still there was a chance of a disproportionate gain, and the offer of this or any other chance is the stimulus to the spirit of gaming which the law prohibits."
Were there no more to this case than I have discussed I might well rest my conclusion upon the opinion of Vice-Chancellor Buchanan, to which I have already referred. But, in the case subjudice, the learned counsel for complainants has argued with great skill, more fundamental objections to the action of the prosecutor attacking both his power under the act of the legislature and the applicability of the statute to these particular machines, under a well-recognized rule of construction.
It is contended that the machines in question do not come within the restriction of the statute upon which the defendant relies. The act is as follows:
"Whenever any furniture or implements made or used for the playing of the game of faro, roulette, rouge et noir or any unlawful game, shall be seized or captured by the police, constabulary or other officers, it shall be the duty of the prosecutor of the pleas of the county where such seizure is made, to have the same destroyed or rendered useless for the uses and purposes aforesaid, and it shall be unlawful to return *Page 581 
the same to the person or persons owning the same, or to any person whatsoever."
Relying upon the canon of construction dealt with in Syms v.West Hoboken, 90 N.J. Law 130, the complainants say that only furniture or implements made for playing games similar to those denominated in the act may be destroyed. The Standard Dictionary defines roulette as a game played at a table divided into numbered and colored spaces, and having in the center a rotating disc on which a ball is rolled until it drops into one of the thirty-seven spaces, the player winning if he has staked his money on that space, or its color, or on a combination including it.
I can see no distinction, for the purposes of this case, between a game of chance, as I have already decided this to be, played upon a revolving disc according as a ball drops by luck into this, that, or another resting-place, and a wheel revolving within a case and coming to a stop by chance before a glazed aperture. In one instance the pellet, by its position at the cessation of motion, determines the fortune of any particular player, and in the other, a portion of a wheel containing a numeral or the word "No," determines the player's luck as it stops in front of the little window upon which all eyes interested will be intently focussed. I feel that this machine is within the general terms of the statute, as construed in the light of the specification of the particular classes. Livermore
v. Camden, 31 N.J. Law 507.
The next point made by the complainants is, that the detention of their goods by the defendant is unlawful, because there was an unlawful seizure. My difficulty with this argument is, that while there was no search warrant and they are not held as evidence, it is perfectly clear that they are designed for the purpose of gaming, and will be put into operation for that end if they are restored to their owners. These machines deliver to each so-called purchaser a package of gum or other small purchase, worth five cents for every five cents deposited in the machine. So far, no fault can be found with the implements, more than can be leveled against thousands of vending machines within our own state and throughout the civilized world. But, in addition thereto, *Page 582 
after having delivered full value for his money, there is held out to the person attracted, the promise of a chance that he may secure, for the deposit of a single nickel, a return of twenty times the amount he hazards, over and above that for which he has ostensibly parted with his coin. It is unescapable that the underlying hope of the operator is based upon the chance of getting something for nothing, or gain out of all proportion to what one has a right to expect. State v. Shorts, supra. It is true that property which may be used either lawfully or unlawfully is not subject to seizure, unless for the reasons mentioned above or upon proof that it has been put, or is intended to be put, to its illegal use. But, for the reason I have just given, it is incredible that the designers of these machines intended them for the innocuous use of vending chewing-gum, or what not, without any other purpose in mind, and the purpose, of course, was to lure the adventurous to a trial of fortune.
The last point to be considered was raised upon behalf of only one of the defendants, and is to the effect that the goods in question were in interstate shipment, and, therefore, beyond the power of this state. The facts are that the goods were shipped through from some point in the middle west to the city of New York, and were removed en route, to be placed in storage in Jersey City to meet the convenience of the complainants because, they say, of lack of storage capacity at their place of business in New York. Of course, it is firmly established that where a delay in such a shipment is caused by matters beyond the control of the consignee, such as insufficient rolling stock on the part of the carrier to complete the journey, the constitutional protection against intermeddling by local authorities continues. But where, as in this case, the break in the journey of the commodity is for the benefit or convenience of the consignee, the exclusive federal jurisdiction ceases and the property at once becomes subject to the laws of the state in which it finds its resting-place. Pittsburg and S. Coal Co. v. Bates,156 U.S. 577.
I will advise a decree dismissing the bill and dissolving the interlocutory injunction. *Page 583