The bill is filed by complainants who leased a dance hall from Dreamland Recreation Club, Incorporated, for a period of ten weeks at a rental of $6,000, which sum has been paid; Dreamland Recreation Club, Incorporated, holding a license from the proper authorities of the city of Newark, dated June 30th, 1931, permitting the holding of dances in the *Page 274 
dance hall, which license does not expire until May 23d 1932. The purpose of complainants in making the lease was to hold what is known as a marathon dance. The word "marathon" expresses the nature of the dance. The dance started on October 22d 1931.
The charge of the bill, summarized, is: the sheriff of Essex county had publicly announced on October 29th, 1931, that he proposed, with his deputies, to "raid" the dance hall and to arrest the dancers and others interested in the dance and to stop the dance; the announcement of the sheriff had been preceded by a demand for the payment by complainants of $5,000 ostensibly as consideration for the sheriff not intervening; there was no illegality in the conduct of the dance and no violation of law; the dance had been continuously attended by police officers of the city of Newark and no cause had been found for interference; the sheriff himself had attended the dance on October 24th, 1931, and had stated that he found nothing wrong with the performance; the sheriff proposed to "raid" the dance hall and make the arrests, not because of any idea upon his part that the law was being violated, but to compel the payment of $5,000; if the sheriff were permitted to interfere with the dance in the manner proposed by him the entire investment of complainants would be destroyed. An injunction was prayed against the proposed claimed illegal interference by the sheriff.
Upon the presentation of the bill to the court early on the morning of October 30th, the court declined to act without notice being sent to the sheriff, and counsel for complainants were advised to immediately give notice to the sheriff that the court would hear him as to whether an order should go with temporary restraint. While the court and counsel for complainants were waiting for the sheriff, the sheriff proceeded with his deputies to the dance hall and did in fact "raid" it and made several arrests and stopped the dance. While the sheriff was engaged in his "raid" the court's order to show cause which contained temporary restraint, was served upon the sheriff, the court having granted the order *Page 275 
to show cause with temporary restraint upon being advised that the sheriff, instead of appearing before the court as he had been invited, proceeded to make the "raid" with knowledge that counsel for complainants at the moment were applying to the court for an order to show cause with temporary restraint and both court and counsel were waiting for the sheriff to be heard.
In the affidavits presented the sheriff denies that he had notice that the court was waiting for him. I do not believe that denial and I think the sheriff did have notice and acted as he did to anticipate the effect of the order of the court, but that matter does not need to be determined at this time. It may await further proceedings in this cause if such proceedings be deemed necessary.
1. The bill states a cause of action cognizable in this court and the affidavits presented for complainants support the bill.
The sheriff urges that this court will not interfere with the enforcement of the criminal law. The statement is too broad as indicated by Brex v. Smith, 104 N.J. Eq. 386, and PublicWelfare Pictures Corp. v. Brennan, 100 N.J. Eq. 132, in which cases the matter was fully considered. To the cases mentioned inBrex v. Smith may be added 4 Pom. Eq. (2d ed.) 3221
§ 1345; 4049, § 1743; Philadelphia Co. v. Stimson,223 U.S. 605, 638; 56 L.Ed. 570; La Chapelle v. Bubb, 69 Fed. Rep. 481;Burns v. McAdoo, 113 App. Div. 165; 99 N.Y. Sup. 51; Hagan v.McAdoo, Ibid. 506; Ibid. 255; Fairmount Athletic Club of GreaterNew York v. Bingham, 61 Misc. 419; 113 N.Y. Sup. 905; Cullen
v. Bourke, 93 N.Y. Sup. 1085; McGorie v. McAdoo, 113 App. Div. 271; 99 N.Y. Sup. 47; Manhattan Iron Works Co. v. French, 12Abb. (N.Y.) N. Cas. 446; Gaither, Police Commissioner, v.Cate (Maryland Court of Appeals), 144 Atl. Rep. 239 (at p.240); Hall v. Dunn, 52 Or. 475; 97 Pac. Rep. 811; 25 L.R.A.
(N.S.) 193; City Bank and Trust Co. v. Dark Tobacco GrowersCo-operative Association, 209 Ky. 330; 272 S.W. Rep. 751.
And upon the general principle may also be cited City ofBayonne v. Borough of North Arlington, 77 N.J. Eq. 166 *Page 276 
(at p. 171); Inhabitants of Greenville Township v. Seymour,22 N.J. Eq. 458, headnote; American School of Magnetic Healing
v. McAnnulty, 187 U.S. 94; 47 L.Ed. 90; State, ex rel. Ladd v.District Court in and for Cass County, 17 N.D. 285;115 N.W. Rep. 675; 15 L.R.A. (N.S.) 331; New Yorker Staats-Zeitung v.Nolan, 89 N.J. Eq. 387.
The sheriff relies on Trenton Theatre Building Co. v. Firth,Sheriff of Mercer County, 93 N.J. Eq. 27; Rosenberg v.Arrowsmith, 82 N.J. Eq. 570, and Green v. Piper, 80 N.J. Eq. 288.
Those cases have no application here. In both Rosenberg
v. Arrowsmith and Trenton Theatre Building Co. v. Firth, it appeared upon the face of the record that the complainants were deliberately violating the law, to wit, the provisions of section 1 of an act for suppressing vice and immorality (4 Comp. Stat.p. 5712), which has to do with business operations and with diversions on Sunday and, by the express terms of that statute, the sheriff or any constable or any other citizen is permitted "to stop every person so offending and detain him or her until the next day to be dealt with according to law," as pointed out by the supreme court in Hogan v. Firth, 115 Atl. Rep. 204.
No statute and no case had been brought to my attention, nor has the research which I have been able to make in the limited time at my disposal, led me to one which holds that the sheriff or any other police officer may enforce the criminal laws by physically preventing the conducting of business by means either of actual force or continuous "raids." I find no suggestion of any such power residing in the sheriffs at common law as stated by 4 Cooley Bl. Com. [*]343, nor in the statement in 35 Cyc.tit. "Sheriffs and Constables," 1532, under the title "Particular Powers and Duties" of sheriffs. This court has interfered to prevent police authorities from preventing the presentation of plays which, in the eyes of the police authorities, were lewd, and it has acted in other cases not reported to prevent police authorities, under the guise of the enforcement of the criminal law, from actively interfering with the conduct of a business.
Under the bill and answer interposed by the sheriff and *Page 277 
the affidavits in this case, the matter is one of discretion in the court and whether a temporary injunction should go or be refused requires a consideration of the facts and circumstances. It would be intolerable if the operation of any business might be interfered with because some police officer came to the conclusion that the business was being operated in violation of the law. Such a condition would result in a government of men, not of law.
2. It is a conceded fact that the dance is being conducted without objection from the police authorities of the city of Newark. It is being operated under a license granted by the proper authorities and those authorities have the right to revoke the license if the dance is being conducted in violation of the law. Affidavits are presented on behalf of the complainants from police officers who have attended the dance from the time it commenced and these police officers, under oath, say that there has been no violation of the law. It is true that notwithstanding the fact that the operation of the dance is under license from the public authorities of Newark and that the police authorities of Newark see nothing in the performance which would induce them to interfere with it, the sheriff as the chief law enforcement officer of the county may still, by virtue of his office, enforce the criminal laws in a legal manner, but the presumption is that the police authorities of the city of Newark and the department of public safety of that city, which has control of the license, will perform their duties. The presumption that public officers are observing the law in the performance of their public duties, indicated by the case of Burkitt v. Beggans, 103 N.J. Eq. 7,
is as strong in favor of the police authorities of the city of Newark as it is in favor of the sheriff of Essex county.
The sheriff has presented affidavits, mostly from his deputies, to the effect that there have been violations of the Vice and Immorality act and it is claimed that, under the authority ofState v. Reade, 98 N.J. Law 596; State v. Diamant,73 N.J. Law 131; State v. Martin, 77 N.J. Law 652, the continuous violation of the law results in the maintenance of a disorderly house and, upon warrants issued by a judge of *Page 278 
the court of common pleas, complainants have been arrested for keeping a disorderly house and have been held to bail.
It is charged, but denied, that the sheriff of Essex county was present at the dance on October 24th, 1931, and that he stated he saw nothing objectionable in the dance. It is conceded that the sheriff was present on that date and that he knew from that date until October 30th, when he interfered, precisely what was going on. I consider his explanation for his lack of interference for that period of seven days as inadequate. I cannot conceive that, had the sheriff observed the kind of conduct which now by the affidavits presented by him it is said to have occurred, that he would not have immediately interfered. It is charged, but denied, that a demand for $5,000 was made as consideration that he should not interfere. It is claimed, however, in the affidavit of George W. Davis that he was approached by complainants and asked to "intercede with the sheriff's office and point out to the sheriff that the performance would be a proper one and in violation of no law." It was stated by complainants, so Davis says, that the complainants were friends of Enoch Johnson, of Atlantic City, and that he, Davis, stated that he would do "anything within my power for the said `Nock' Johnson, but that I would not inject myself into the situation until after the said `Nock' Johnson had told me that he was interested in Ruty's welfare." Mr. Davis proceeds to state that he talked with Enoch Johnson on the telephone and was told by him that "he was interested in Ruty and if possible would like to see that they did not interfere with the opening of the dance, and that after the dance was in progress for some time if there was anything objectionable, then, of course, the sheriff could act." And then Mr. Davis says: "I told the said Johnson that I would see what I could do for said Ruty since he was interested in him." Davis then says that Mr. Johnson "told me that if I could keep the sheriff's office from interfering with the opening of the performance he would personally come to Newark the following Monday or Tuesday and take charge of the situation himself." Mr. Davis says that he then called the sheriff's office and spoke to the *Page 279 
chief deputy and urged the chief deputy not to interfere with the opening of the marathon dance, "stating to him that after the dance was in progress some time he would soon enough know whether or not there was a violation of the law in connection with the operation of the dance," and that the chief deputy told him "that he did not know what he could do about it, he said `I have not received instructions to prevent the performance, I received instructions to warn them not to commence the performance.'" Davis says that he informed complainant, Ruty, what had transpired between him and the sheriff's chief deputy and further told him that even if the sheriff's office did not interfere with the commencement of the marathon dance the Newark police undoubtedly would step in and close them out, whereupon Ruty informed him that he had been advised by Mr. Egan, of the department of public safety of Newark, that there would be no opposition on the part of the Newark police.
I have referred to the statements made by Mr. Davis in his affidavit in some detail because, while there is a denial of any request for $5,000, there is conceded activity on the part of Mr. Davis, who is in nowise connected with the sheriff's office or with the enforcement of the law.
It is stated in the affidavits presented by the sheriff that, prior to the opening of the dance he had ordered complainants not to commence the dance. What right the sheriff had to give any such order is not indicated either in the affidavits nor was it indicated by his counsel on the argument. The time has not yet come when the sheriff or the police can order a business not to be commenced for fear that if it is commenced there may be some violation of law connected with its operation. This is going even one step further than suppressing by physical force a business because of a claim that it is being operated in violation of the law. The municipal authorities of the city of Newark have control of the situation because of their control over the license.
There is sufficient in this case, I think, to require the court to hold the restraint. There is no doubt but that if the sheriff is permitted to perform the acts which he threatens *Page 280 
the business of complainants will be irreparably injured. If the sheriff is right that complainants are violating the law, it is to be assumed that they will be adequately punished as a result of proceedings properly instituted against them in the criminal court. In that proceeding it will be judicially determined whether there was a violation of the law. As the record stands in this case, I do not think that the sheriff has a right, in advance of a judicial determination, to take such steps as he proposed, as he says, for the enforcement of the criminal law but, as I think the fact is, to prevent the continuance of the dance.
I have no doubt upon the facts and the law but that temporary restraint should issue, but had I doubts this is one of the class of cases in which restraint should be allowed notwithstanding the doubt. General Investment Co. v. Bethlehem Steel Corp.,88 N.J. Eq. 237.
While the operators of the dance have been arrested on warrants, they are still presumed to be innocent. How the sheriff knew that the dance could not be conducted without violation of law before it began, is not disclosed by the record. All that he says upon the subject in his affidavit is: "Knowing that in the past the police authorites of Essex county had stopped a similar performance, and feeling it my duty to enforce the laws of the State of New Jersey, I directed Charles Hummel, a deputy sheriff, to warn the promoters not to start the performance." What right had the sheriff to take this position?
The sheriff certainly could not have legally taken this position unless it be the fact, which is not proved, that a marathon dance cannot under any circumstances be conducted without violating the law. I know of no authority so holding. The court has no sympathy whatever with these dances, but neither the lack of sympathy of the court nor the lack of sympathy of any citizens can convert the dance into an illegal operation. Neither the sheriff nor the police authorities have been constituted censors.
The injunction should not, of course, interfere with the orderly processes of the criminal law and should not protect *Page 281 
the complainants or others from being made to respond to the criminal law, but it should protect complainants, in the operation of the dance, against interference by the sheriff or his deputies in such a way as to physically prevent the operation of the dance or continuous trespasses which would result in the closing of the dance, such as the making of so-called "raids," which seems to be an extra-judicial method lately adopted by some officers of the peace to exercise their claimed rights of censorship. I know of no legal support for the making of these so-called "raids" and when they are made or threatened in such a way as to result in injury to property rights, there is nothing for this court to do but to interfere, however distasteful to the court such interference may be.
There is a recognized method under the common law by which the criminal courts can abate a nuisance, but that method is not to permit peace officers to exercise their own discretion, in advance of judicial determination, to destroy property upon the theory of abatement of a nuisance.
The sheriff has filed an answer. If he desires, the case should be set down immediately for final hearing. I will continue the temporary restraint in accordance with these conclusions until final hearing.