On the 23d day of August, 1932, complainants filed a bill of complaint, together with the affidavits thereto attached, alleging that they were tenants of certain stores and premises in Atlantic City known as 819 Boardwalk and 2213 Boardwalk; that they were engaged in the lawful business of selling, trading and dealing in various kinds of merchandise, c.; that said business was conducted under the distinctive title or trade name of Baskill and Penni-Harts Amusement Parlor; that they were required to pay and did pay to the city of Atlantic City a fee of $50 for each Baskill and Penni-Harts Amusement Parlor. *Page 261 
That "on August 19th, 1932, two police officers of the city of Atlantic City, known as Ralph Gold and Fred Moore, came to the place of business of complainants and claiming to act under some pretended order or authority of Harry Bacharach, mayor of said city, interfered with complainants in the conduct of their said business and wholly interrupted the said business and refused to permit the further continuance thereof and refused to permit patrons to enter the premises of complainants."
That "again on August 20th, 1932, the two said police officers of the city of Atlantic City, known as Ralph Gold and Fred Moore, came to the place of business of complainants and claiming to act under some pretended order or authority of Harry Bacharach, mayor of said city, interfered with complainants in the conduct of their said business and wholly interrupted the said business and refused to permit the further continuance thereof and refused to permit patrons to enter the premises of complainants."
They allege further that they were violating no law of this state or ordinance of said city; that Baskill and Penni-Harts are games of skill; that they had invested large sums of money amounting to not less than $25,000 in the aggregate, and that they would suffer irreparable and irremedial injury unless afforded protection and relief by this court; that no charge is pending or has been commenced charging complainants with conducting an unlawful business or with the violation of any act of the legislature.
Upon the filing of said bill of complaint an order to show cause was allowed, returnable on the 20th day of August, with a restraint in the following language:
"And it is further ordered that in the meantime and until the further order of this court, the defendants, the city of Atlantic City, its officers, agents and servants, Harry Bacharach, mayor of the city of Atlantic City, Ralph Gold and Fred Moore, and Samuel Lipman, acting chief of police of the city of Atlantic City, desist and refrain from disturbing complainants in the prosecution of their business, by refusing *Page 262 
to permit patrons to enter the premises, No. 819 Boardwalk and No. 2213 Boardwalk, in the city of Atlantic City, county of Atlantic and State of New Jersey, or in anywise interfering therewith, excepting any proceedings under due process of law."
Upon the return day, the defendants presented the affidavit of the same two members of the vice squad of the police department of the city of Atlantic City, in which they affirm that the complainants were not engaged in the lawful business of selling and dealing in merchandise, but were engaged in a game of chance, which game of chance was described in full form. They admit that on August 19th and 20th they refused to permit the complainants to continue their business, giving as a reason therefor that it was in violation of the laws of the State of New Jersey, and that complainants were, in fact, engaged in conducting a game of chance; that on August 19th the complainants were apprehended and arrested, charged with violation of the criminal laws of the State of New Jersey, which charge is still pending; that each give as their opinion that the games conducted for the complainants in the premises aforesaid are games of chance and that they therefore instructed the complainants to discontinue the further conduct of said game; that each deny that complainants have secured licenses for playing these games, and that said license only provides for an amusement exhibit.
At the hearing paraphernalia such as is used in said game was produced in court. It was admitted that these particular exhibits were from one of the premises in question and were identical to those used in the other. Further testimony was taken at the hearing, none of which, however, is of particular assistance in the determination of this cause. The complainants deny that they are conducting games of chance.
The statute concerning crimes (2 Comp. Stat. p. 1765 § 60, reads as follows:
"All playing for money or other valuable thing, at cards, dice or other game, with one or more die or dice, or with any other instrument, *Page 263 
engine or device, in the nature of dice, having one or more figure or figures, number or numbers thereon, or at billiards, or A.B.C. or E.O. table, pool table, or other tables, or at tennis, bowls or shuffle board, or at faro-bank, or other bank of the like kind, under any denomination whatever; and all cock-fightings shall be misdemeanors."
If the complainants were in possession of gaming devices, said gaming devices should have been confiscated and, at the proper time, destroyed. If the police officers knew that complainants were in possession of such devices as the complaints show they were, it was their duty to confiscate the same. This they did not do, but closed the places of business of complainants and declined to permit patrons to enter the premises.
The issue, therefore, is: Can the city or its representatives do illegal acts to prevent the doing of other illegal acts by an individual where the city or its representatives have ample and complete legal authority to prevent the doing of such illegal acts by an individual or for the punishment of the individual for such acts?
My attention has not been called to any case holding that such authority exists. The cited case of Zaft v. Milton, 96 N.J. Eq. 576,
was on bill "for an injunction to restrain the prosecutor of the pleas of Hudson county from destroying certain vending machines, under the Criminal Procedure act." Comp. Stat.p. 1875 ¶ 168. That clause reads as follows:
"Whenever any furniture or implements made or used for the playing of the game of faro, roulette, rouge et noir or any unlawful game, shall be seized or captured by the police, constabulary or other officers, it shall be the duty of the prosecutor of the pleas of the county where such seizure is made, to have the same destroyed or rendered useless for the uses and purposes aforesaid, and it shall be unlawful to return the same to the person or persons owning the same, or to any other person whatsoever."
The issue in that case was whether or not the vending machines were intended to be used for gambling purposes and, of course, the court held, when it was ascertained they *Page 264 
were to be used for gambling purposes, that the prosecutor of the pleas should not be enjoined from destroying them.
The case of Pure Mint Co. v. LaBarre, 96 N.J. Eq. 186, was one in which complainant's bill "seeks injunction against the police authorities of the city of Trenton to restrain them from seizing and confiscating certain machines owned by complainant and leased to various retail merchants in Trenton."
The city solicitor, in his brief, in referring to this case, says: "It was contended that the operation of the machine was in violation of section 65-B of the Crimes act (P.L. 1903p. 214)," and quoted Vice-Chancellor Buchanan as holding:
"This is the only issue raised in the argument, and the question of the right of seizure and confiscation need not be considered, since, obviously, the machines are intended to do what they in fact do, and, if they violate the statute, complainant has no standing to ask the aid of this court."
The previous clause in Vice-Chancellor Buchanan's opinion reads:
"The confiscation of machines and interference with complainant's business therein is admitted by defendants, and justified as a part of their duty in the enforcement of the law," and then proceeds to say that this is the only issue.
The city, in the present case, has not confiscated the machines, nor has it in any way taken possession thereof. Had it done so an entirely different issue would have arisen.
The case of Levison v. David, 106 N.J. Eq. 514, is another bill praying for an injunction against a threatened confiscation.
It is true that in Publix New Jersey Theatre, Inc., v.Flynn, 110 N.J. Eq. 160, this court held that "one who admits continuous violations of the law of this state has no standing in this court to apply for an injunction, the result of which would be to permit him to continue his wrong-doing."
"Nevertheless it is a rule of very general application that, *Page 265 
where public officers are acting in breach of trust, or unlawfully or without authority or threatening to do so, and such acts will result in irreparable injury, or will require a multiplicity of suits at law to obtain redress, they may be enjoined." 32 Corp. Jur. 240 ¶ 383.
There can be no question that this court will make no order which will permit a wrong-doer to continue such wrong-doing. That is not the present case. If these complainants are violating the law the police authorities have ample and sufficient powers to prevent the same. They may arrest, they may take proceedings against the complainants as conducting a disorderly house, they may seize and confiscate the articles used in gaming or they may do that which the city solicitor refers to in closing his brief when he says:
"For these reasons it is respectfully submitted that the device now receiving the attention of the court is a clear game of chance and as such it is within the power of the police authorities of the city of Atlantic City to order the operators therefore to desist from operation and on their continued failure to so desist to have them brought before the proper authorities of the city."
This is without doubt the law and within the power of the city authorities, and as well is it the duty of the city authorities so to do, or if they shall see fit to take other legal steps, such is their duty.
The city and its representatives have failed to perform those acts which it is their duty to perform, and cannot be heard to complain when, in the face of such failure, this court will not permit them to do illegal acts to obtain the same purposes which it and they can readily obtain by process under the authority of law.
Assuming that the complainants are violating the law, the city and police authorities have ample and sufficient legal power to control the situation. Not only have they such power, but it having been proven that the authorities have knowledge of such violations, it is their duty to enforce the *Page 266 
law of the land, and they cannot make as an excuse that this court prevents them from doing illegal acts to stop the prevention of crime when they have within their powers full, ample and complete legal authority to prevent such violations of law and to punish the violators.
The restraint heretofore granted has in no way prevented the defendants from obtaining the results they claim to desire. It is needless to say that no act of this court would prevent them from so doing, nor has there been any attempt to justify the acts of the representatives of the police department in refusing, in the manner in which they did, to permit patrons to enter the premises of complainants.
It is unnecessary for me to state in detail the powers of the police department concerning disorderly houses and the method by which they may be legally closed, or to attempt to advise the authorities in detail of their legal powers. As stated before, the only question is: Is it the duty of this court to restrain the authorities from doing illegal acts? The door is open wide for the authorities and this court will not, in the slightest, narrow the portals of justice. It must be understood by all that this court does not put any obstacles in the way of the authorities performing their sworn duty. On the contrary, the attention of the public authorities is directed to the necessity of performing their sworn duties, and this court cannot accept any responsibility for the failure of the authorities so to do.
The constitution of the United States provides that "no person shall * * * be deprived of life, liberty or property without due process of law." Article V, amendments ratified 1790. The complainants are entitled to this and the restraint heretofore granted does grant them this right, and nothing further.
 The order to show cause will be made absolute. *Page 267