Complainant proposed to hold a meeting in Union City in a hall hired by it for the purpose, but the police acting under order of the city commission forbade the meeting. Complainant applies for an injunction to restrain police interference.
On the argument complainant relied in large part on article 1, sections 5 and 18 of our constitution relating to freedom of speech and of assembly. Complainant, however, is a corporation and the rights mentioned run only to natural persons. While the members of the corporation have a right *Page 488 
freely to assemble and to speak their sentiments, the corporation itself has no constitutional right to conduct a meeting or, by its agents, to speak. Paul v. Virginia, 75 U.S. 168;19 L.Ed. 357; Orient Insurance Co. v. Daggs, 172 U.S. 557;19 Sup. Ct. 281; Selover, Bates Co. v. Walsh, 226 U.S. 112;33 Sup. Ct. 69; Northwestern National Life Insurance Co. v. Riggs,203 U.S. 243, 255; 27 Sup. Ct. 126; Western Turf Association v.Greenberg, 204 U.S. 359; 27 Sup. Ct. 384; Essgee Co. of China
v. United States, 226 U.S. 151; 43 Sup. Ct. 514.
Although the legislature has power to prohibit corporations from holding meetings, it has not done so, and the police or other municipal officers have no authority to impose such a ban upon complainant. The defendants say, in effect, that if the meeting takes place speeches will be made extolling the present government of Germany and advocating measures to abridge the rights of Jews in the United States; that Jews will thereby be incited to riot, and that defendants forbade the meeting in order to avert disorder and possible bloodshed. The explanation does not, in a legal sense, excuse defendants. Our law does not prohibit the public expression of unpopular views. It is lawful to advocate, for instance, the establishment of a dictatorship in America, or a soviet form of government, or an hereditary monarchy, or the abolition of religious freedom, or other changes in our political, economic or social system, no matter how unwise or how shocking. If lawless elements in the community, instead of ignoring such propaganda, or meeting it by sound argument, resort to riot, it is the duty of police to protect the lawful assemblage and to repress those who unlawfully attack it.
The defendants further present affidavits which are uncontradicted and which disclose that at previous meetings held by complainant speeches were made and handbills distributed urging a boycott of Jewish merchants and professional men of Union City and even attacks on the persons of Jews. These speeches and handbills have been so common as to indicate a settled policy of complainant. It hardly need be *Page 489 
said that fomenting boycotts and assaults is unlawful. Since complainant has used — or so it appears on this application — the right of conducting meetings given it by the state in order to break the law of the state, this court will not aid it to hold more meetings.
"He who comes into equity must come with clean hands is a principle which furnishes a most important and even universal rule affecting the entire administration of equity jurisprudence as a system of remedies and remedial rights." In re Leupp,108 N.J. Eq. 49. The maxim was applied in Publix New JerseyTheatre, Inc., v. Flynn, 110 N.J. Eq. 160, under circumstances not unlike those in the present case. On motion for an injunction to restrain the police from enforcing an allegedly illegal ordinance to the disadvantage of complainant's theatre, it appeared that complainant habitually operated the theatre on Sundays in violation of law and for this reason, among others, the injunction was denied. Miller v. Atlantic City, 111 N.J. Eq. 260,
looks the other way, but the Flynn Case seems to me the better law and so I follow it and deny the application for an injunction. Complainant may hold its meeting without the aid of the court and if the police unlawfully interfere complainant will have a remedy by indictment or action for damages. While these remedies may not be entirely adequate, the complainant cannot have relief in equity on the facts presented on this interlocutory application. *Page 490