By this bill the complainant seeks to restrain the defendants, the Prosecutor of the Pleas of Monmouth County, and the chief of detectives of that county, their agents, c., from interfering with complainant's business conducted on the Asbury Park boardwalk under lease and license from that city. On the filing of the bill of complaint an order to show cause with temporary restraint was issued, and the matter now comes before the court on the return of that order. *Page 421 
The bill alleges that for eight years last past the complainant has been the lessee of the City of Asbury Park of certain premises on the easterly side of the boardwalk in that city; that all during that period it has occupied said premises and conducted and operated therein an amusement device known as "Fascination," installed there at a cost of approximately $20,000 and that fifteen persons are employed there in the conduct of the business with an average weekly payroll of $1,000.
It is further alleged, and admitted in the answering affidavits, that on May 30th, 1944, county detectives, agents of the defendant-prosecutor and the defendant-chief of detectives, came to complainant's premises and ordered them closed immediately, claiming that the machines used in the operation of the amusement "Fascination" were gambling devices and the amusement a game of chance prohibited by law. No formal complaint had been made against the complainant, the detectives were not armed with any warrant or other legal process, and no arrest was made or threatened. The complainant was merely told, "We have got our orders and this place has got to close up." Under vigorous protest the complainant closed its place of business and it remained closed until the issuance and service of the order to show cause advised herein.
The amusement device here involved is thus described in the bill of complaint:
"The amusement known as `Fascination' consists of a table which has twenty-five holes in it in five rows. At the end of this table there is a horizontal device which has twenty-five electric lights in it, arranged in five rows, the center light always being lighted. The person who participates in this game is given a ball. He rolls the ball along the table in an effort to roll it into one of the holes on the table. His object is to roll it consecutively into five holes running from left to right, or five holes running from the bottom of the table to the far end of the table, or five holes running diagonally across the table in either direction. As he rolls the ball the lights on the vertical device at the end of the table register the result of his effort. Not less than four nor more than *Page 422 
fifty persons engage in this amusement simultaneously, and the first one who succeeds in rolling the ball into five consecutive holes across the table, or five holes running lengthwise of the table, or five holes running diagonally across the table is declared the winner. When one of the participants has succeeded in the manner above set forth, all other lights on all other tables go out, and the lights on the table of the winner remain lighted to show that he has accomplished the purpose of the amusement device.
"Whether or not a participant succeeds in placing his ball in five holes running across the table, five holes running diagonally or five holes running the length of the table, depends entirely and solely upon the skill which he exercises in the handling of the ball which he uses."
The description of "Fascination" and its operation as contained in the defendants' affidavits is not materially different except for the following:
"The playing surface is broken by an inverted `V' shaped ridge approximately an inch in height, which the players ball must in all instances hit in order to get in the playing holes. * * * As a matter of chance, the first person who completes the combination of five lights in a straight line, either vertical, horizontal, or diagonally is the winner. At the start of each game, depending upon the number of players participating, the attendant announces the prize for that particular game, running from a flat of fifty cigarettes to any number of cartons of cigarettes. In addition the winner may accept a coupon, which he may accumulate over a period of time and receive a prize of greater value."
The complainant asserts that "Fascination" is a game of skill and therefore entirely within the law, while on the other hand, the defendants claim it is a game of chance and that, therefore, both the mechanical device and its operation are prohibited by law, and are in violation of article 4, section 7, sub-section 2 of the constitution of this state and of R.S. 2:135-1.
It is conceded that there has been no adjudication by the courts of this state touching the character of this device or game as one of skill or chance, but it is alleged in the bill, *Page 423 
that "Fascination" "has been recognized as a game of skill in judicial decisions" of other jurisdictions. This allegation is not denied.
On the return of the order to show cause, the arguments of counsel were directed mainly to the issue as to the character of the amusement device and game — that is, whether of skill or of chance. But, in my judgment, on this application, that issue is secondary, and the real issue here is whether the defendants, without due process of law, may interfere with or prevent the conduct and operation of a business which, in the absence of positive proof or any authoritative adjudication to the contrary, must be presumed to be lawful. In other words, whether a lawful business may be closed up, and the owner's property rights therein damaged or destroyed, by the arbitrary action of officers of the law.
While ordinarily equity will not enjoin criminal prosecutions, there is an exception to the rule where property rights are involved, and it is claimed seriously and in good faith that the act of the prosecutor is not authorized by law. Royal BakingPowder Co. v. Emerson, 270 Fed. Rep. 429, and authorities therein cited. Here, however, no criminal prosecution is pending, nor has any restraint against the due processes of the law been imposed or sought. It will not be presumed that the complainant in the conduct of his business is guilty of a crime. The presumption is to the contrary.
Of course, the fact that "Fascination" has operated in Asbury Park for a period of eight years, or in other cities and states, without molestation from the authorities charged with the duty of enforcing the criminal laws, a fact strongly stressed at the oral argument and in the complainant's brief, is of no importance in determining the character of the device and game here involved.Hunter v. Teaneck Township, 128 N.J. Law 164. The failure of the authorities to enforce the criminal laws in one locality cannot justify their violation in another. Nor does the lack of prosecution of particular acts spell their legality. Nor is the fact that complainant operates his business under a license from the City of Asbury Park at all pertinent. Id. But there is ample judicial authority in this state for the proposition that valuable *Page 424 
property rights will be protected by injunction from damage or destruction, threatened or resulting, from the arbitrary acts of officials acting without due process of law. Public WelfarePictures Corp. v. Brennan, 100 N.J. Eq. 132; Brex v. Smith,104 N.J. Eq. 386; Ruty v. Huelsenbeck, 109 N.J. Eq. 273; DellPublishing Co. v. Beggans, 110 N.J. Eq. 72; Miller v.Atlantic City, 111 N.J. Eq. 260; Sterling Distributors, Inc.,
v. Keenan (Chancery Docket 139, page 584, an unreported decision of Vice-Chancellor Bigelow, January 10th, 1944). Of these cases, Miller v. Atlantic City and SterlingDistributors, Inc., v. Keenan, supra, seem to me to be on all fours with this one. The Miller Case has not been reversed, or, so far as I know, criticised by any of the courts of this state. It is true, as defendants point out, that it was questioned inAmerican League, c., v. Eastmead, 116 N.J. Eq. 487, but the court was there discussing the maxim "He who comes into equity must come with clean hands," as applied in Publix New JerseyTheater, Inc., v. Flynn, 110 N.J. Eq. 160, a maxim not in any way involved in the Miller Case. The Flynn Case was cited by Vice-Chancellor Ingersoll in his opinion in the Miller Case, and the two cases were distinguished. I have never understood that the decisions in those two cases were in conflict. However, if criticism of the Miller Case was intended by what was said in the American League Case, its force is somewhat spent in view of the most recent decision of this court touching the primary issue of the instant case. See Sterling Distributors,Inc., v. Keenan, supra. In that case the owners and operators of certain mechanical games sought an injunction against interference by the director of public safety of the City of Newark, who had ordered the owners to discontinue their use and operation on the ground that they were gambling devices, games of chance, and therefore illegal. The director was acting without authority of complaint or warrant, but arbitrarily as though his orders were a matter of discretion. On the filing of the bill of complaint in that case an order to show cause with preliminary restraint was advised. That restraint was continued until final hearing pending which a criminal complaint was made and heard in *Page 425 
the Essex Special Sessions, resulting in a verdict of not guilty. I think the correct procedure was followed in that case. It was substantially that pursued in the Miller Case and apparently grounded in the same reasons. In its opinion after final hearing, the court said: "The complainant does not suggest that the judgment of the Special Sessions is conclusive on the issue before me; but offers it as a persuasive precedent, a decision by a learned and experienced judge. Accordingly, I have made an independent study of the matter and am happy to reach the same conclusion as Judge Flannagan." In that case exactly the same issue as to the character of the device or game as was involved in the Miller Case, and here was presented; the defendant was acting arbitrarily, without complaint, warrant or other process of law, as here; the complainant sought protection of its property rights in a business claimed by it to be lawful and charged by the defendant to be unlawful, as here, and there had been no judicial determination as to the character of the devices or games at the time the preliminary restraint was continued to final hearing. The situation there was parallel, in every material aspect, to that presented here. I consider these two decisions of this court as controlling on this motion. The underlying principle of all the cases which I have cited above is the same. In all of them property rights were protected from threatened damage from arbitrary acts of officials.
In Ruty v. Huelsenbeck, supra, it was held that "Notwithstanding the general rule that a court of equity will not interfere in the enforcement of the criminal law, the court will, at the suit of the owner of a business, in a proper case enjoin the sheriff or other police authorities from interfering with the conduct of the business by physical force such as raids and continuous trespasses upon the mere claim that offenses against the criminal law are being committed during the operation of the business." And that "Where the sheriff threatens to interfere with the operation of a business by extra judicial methods, such as a raid, an injunction will issue if there be doubt as to theillegality of the operation of the business." (Italics mine.) In that case the Vice-Chancellor said: "It would be intolerable if the operation of any business *Page 426 
might be interfered with because some police officer came to the conclusion that the business was being operated in violation of the law. Such a condition would result in a government of men, not of law."
There is very substantial doubt in my mind as to the illegality of the mechanical device and game here involved, and there are valuable property rights at stake. Prior to final hearing no action should be taken by this court which would destroy those rights, and a lifting of the ban imposed by the order to show cause quite possibly would do so. It is the function of equity to preserve rather than to destroy, and after eight years of continuous operation of these devices and games without molestation by the law enforcement authorities, precipitate action by them, acting without due process of law, is not in order.
In opposing the continuance of the restraint imposed by the order to show cause, the defendants rely upon the following New Jersey decisions: Pure Mint Co. v. LaBarre, 96 N.J. Eq. 186;Zaft v. Milton, 96 N.J. Eq. 576; Levison v. David, 106 N.J. Eq. 514; Publix New Jersey Theatre, Inc., v. Flynn, supra;State v. Murzda, 116 N.J. Law 221; American League, c., v.Eastmead, supra; State v. Berger, 126 N.J. Law 39; Hunter v.Teaneck Township, supra, but these cases are not controlling and all are easily distinguishable from the instant case. In practically all of them, where an injunction was refused, the complainants were admittedly violating the criminal statutes, or it was too plain for argument that the mechanical devices involved were gambling devices, or the doctrine of clean hands barred them from relief in this court.
In Pure Mint Co. v. LaBarre, supra, Vice-Chancellor Buchanan said that the only issue was whether the operation of the slot machines there involved was in violation of section 65 b of the Crimes Act. He found that they were gambling devices and refused to enjoin the police authorities of Trenton from seizing and confiscating certain machines. What was the sole issue in that case is, as already shown, secondary here, and in my judgment, should be disposed of only on final hearing. From the report of that case it does not appear *Page 427 
that the primary issue with which we are here confronted was either involved or considered there.
In Levison v. David, supra, the same Vice-Chancellor refused to advise an order to show cause with restraint against the prosecutor and the chief of detectives of Union County, and the chief of police of the City of Elizabeth, who had threatened to confiscate certain slot machines on the ground that they were gambling devices. The learned Vice-Chancellor said "The question as to whether these machines come within the proscription of the criminal law against gambling devices — if indeed it should be determined in this court at all — is quite obviously * * * one which ought not to be determined except at final hearing." He found that the complainant was not operating the machines and did not show a case of irreparable damages. An injunction was quite properly refused, but he made this significant "quaere": In such a case will equity proceed to final decree until the legal question is first determined in a court of law?" In the instant case there has been no confiscation of machines nor have the authorities taken possession of any of them. The Levison Case
was obviously an attempt to draw the fire of the Court of Chancery in advance of an attempt to operate the machines there involved which were modifications of those involved in the PureMint Co. Case. The court quite properly refused to pass on the question of their illegality on a preliminary motion.
In Zaft v. Milton, supra, complainant sought to enjoin the Prosecutor of Hudson County from destroying certain vending machines which he had seized on the ground that their possession was in violation of the Crimes Act. An injunction was refused by Vice-Chancellor Bentley on final hearing; but it is quite obvious, from his opinion, that an "interlocutory injunction" was granted pending final hearing. His final decision was largely controlled by that of Vice-Chancellor Buchanan in the Pure MintCo. Case; but aside from that, it was clear that the machines were gambling devices and he so held. But the decision on final hearing is not pertinent here. *Page 428 
 Publix New Jersey Theatres, Inc., v. Flynn, supra, is wholly inapplicable. It involved the operation of a theatre on Sundays in violation of a city ordinance and of the Vice and Immorality Act. It was held that "one who admits continuous violations in this state has no standing in this court to apply for an injunction, the result of which would be to permit him to continue his wrongdoing." The "clean hands" doctrine was applied.
State v. Berger, supra, was an appeal from a conviction of gambling. The sole question there involved was whether or not the evidence was sufficient to support the conviction, and while that question involved the determination of the character of the game played by the patrons of the theatre, the case has no application here.
In Hunter v. Teaneck Township, the primary question was whether an ordinance prohibiting the keeping of pinball machines in any place of business in the township was ultra vires. The ordinance was held valid. Under authority of that ordinance, the police of the Township of Teaneck had seized some of the banned pinball machines, and the propriety of that seizure was also in question. The Supreme Court held that the pinball machine was a gambling device — that the predominate element in the game was chance. Mr. Justice Perskie, speaking for the Supreme Court, referred to three lines of thought, exemplified by the cases which he cited, prevailing in different jurisdictions. He found that the pinball machines were gambling devices under any or all of the three stated rules. It was, therefore, unnecessary for the court to adopt any one of these three rules as the law of this state. It was held that the machines were illegal irrespective of the rule to be applied. The decision is not controlling as to the character of the mechanical device here involved.
The charge of the defendants that these machines are gambling devices and their operation illegal because such operation constitutes a game of chance is vigorously denied by the complainants, and their argument based upon a description of the machines and the games played thereon is plausible. There is no conclusive proof to support defendants' *Page 429 
charge and there has been no judicial determination of the character of these machines. Assuming that they are not illegal, confiscation and destruction would obviously cause irreparable damage to the complainant-owner. The proof is that because of the war-time shortage of materials, they cannot be replaced. Under these circumstances, it would seem to me, the duty of this court is plain.
It is argued on behalf of the defendants, that because of the "inverted V-shaped ridge" referred to in defendants' description of the mechanical device used in playing the game, once the player's ball strikes this "ridge" he loses all control over it, that from that point on its final resting place is purely a matter of chance, and that, therefore, the game is one of chance. But the conclusion is hardly justified by the premise. The ridge is but a hazard of the game. My own sad experience with the game of gold demonstrates this to my entire satisfaction. In attempting to play that game I have found, much to my chagrin, that I have no control over the ball after I have hit it with the club, while others, more skillful and experienced, seem to have an uncanny ability to drive it where they will. And yet even a skillful player may lose control if it lands in a trap, in the rough, strikes a "ridge," or encounters some other hazard. Notwithstanding, the game of golf cannot be classified as a game of chance. People v. Cohen, 160 Misc. (N.Y.) 10;289 N.Y. Supp. 397.
Whether the game of "Fascination" is a game of chance, or the mechanical devices used in playing the game are gambling devices, should not be determined on this preliminary hearing on exparte affidavits. Such an adjudication should be made by this court, if at all, only on final hearing. The restraint imposed by the order to show cause does not, and, of course, any continuation thereof should not, interfere with or prevent the defendants from the enforcement of the criminal laws of this state against the complainant or anyone else, provided they proceed by due process of law. Nor will the court make any order which will permit a confessed wrong-doer to continue such wrongdoing. "If these complainants are violating the laws, the police authorities have ample and *Page 430 
sufficient powers to prevent the same" (Miller v. AtlanticCity, supra) by the due processes of the law.
The restraint imposed by the order to show cause will be continued until final hearing.