15 N.J. Super. 124 (1951)
82 A.2d 903
THRILLO, INC., A NEW JERSEY CORPORATION, WILLIAM C. O'BRIEN, JR., AND THOMAS O'CONNELL, t/a SKILO, WILLIAM WOLFSON AND GEORGE RUTY, t/a RADIO AMUSEMENT CO., S. AND D. CORP., A NEW JERSEY CORPORATION, AND ABE SIMMS AND GEORGE RUTY, t/a SEASHORE AMUSEMENTS, PLAINTIFFS,
v.
LEWIS P. SCOTT, COUNTY PROSECUTOR OF THE COUNTY OF ATLANTIC, DEFENDANT.
Superior Court of New Jersey, Atlantic County Court Law Division.
Decided July 21, 1951.
*126 Mr. Edward I. Feinberg, attorney for the plaintiffs.
Mr. David R. Brone, First Assistant County Prosecutor of Atlantic County, attorney for the defendant.
NAAME, J.C.C.
The action in this cause was initiated under the Declaratory Judgments Act whereby the plaintiffs seek a declaration of their respective rights, status and other legal relations. After the filing of the complaint and the answer by the defendant, the parties agreed to stipulate the facts. The parties likewise conceded the court's jurisdiction.
The facts, as stipulated, may be summarized as follows: The plaintiff, Thrillo, Inc., operates a game known as Thrillo at 2129 Boardwalk, Atlantic City, New Jersey, and holds a mercantile license issued by the City of Atlantic City which designates the game as a skill game and for which this plaintiff pays an annual license fee of $3,000. It appears, also, that this plaintiff occupies the premises under a lease for which it pays an annual rental of $13,200; that its capital investment is in the neighborhood of $30,000 and its annual payroll likewise amounts to $30,000.
The plaintiffs, William C. O'Brien, Jr., and Thomas O'Connell, trading as Skilo, operate a game known as Skilo *127 at 192 St. James Place, in said Atlantic City, New Jersey, and hold a mercantile license issued by the City of Atlantic City which designates the game as a skill game and for which these plaintiffs pay an annual license fee of $3,000. It appears that their capital investment is about $40,000 and their annual payroll amounts to about $74,000.
The plaintiffs, William Wolfson and George Ruty, trading as Radio Amusement Company, operate a game known as Skill-Pastime at 809 Boardwalk, Atlantic City, New Jersey, and hold a mercantile license issued by the City of Atlantic City which designates the game as a skill game and for which these plaintiffs pay an annual license fee of $3,000. It appears also that these plaintiffs occupy said premises under a lease for which they pay an annual rental of $12,000; and that their capital investment is in the neighborhood of $40,000 and their annual payroll is about $57,200.
The plaintiff, S. and D. Corporation, a corporation of the State of New Jersey, operates a game known as Playo at 21 North Arkansas Avenue, Atlantic City, New Jersey, and holds a mercantile license issued by the City of Atlantic City which designates the game as a skill game and for which this plaintiff pays an annual license fee of $3,000. It appears that its capital investment is about $25,000 and its annual payroll is about $35,000.
The plaintiffs, Abe Simms and George Ruty, trading as Seashore Amusements, operate a game known as Skill-Bango at 2617 Boardwalk, Atlantic City, New Jersey, and hold a mercantile license issued by the City of Atlantic City which designates the game as a skill game and for which these plaintiffs pay an annual license fee of $3,000. It appears also that these plaintiffs occupy said premises under a lease for which they pay an annual rental of $10,000 and that their capital investment is in the neighborhood of $32,000.
About June 5, 1951, the defendant received a letter from the Attorney-General of the State of New Jersey addressed to all prosecutors, in which, among other things, attention was called to the operation of certain games known as bingo *128 and the like, and called upon the prosecutors to ban all games of the bingo type in which the skill of the player is not the predominant factor in determining the winner. As a result of this letter, the defendant, on June 6, 1951, addressed a letter to William S. Cuthbert, Director of Public Safety of the City of Atlantic City, in which, among other things, the defendant called upon the Director of Public Safety to ban all games of chance wherein the skill of the player does not determine the result. Following this letter, each of the plaintiffs received a written notice dated June 15, 1951, signed by Meredith B. Kerstetter, Assistant Director of Public Safety, which read as follows:
"PLEASE TAKE NOTICE that I have been directed by the Prosecutor of Atlantic County to close the premises operated by you more particularly specified above, it being his opinion that your mode of operation violates the present gambling laws of the State of New Jersey.
THEREFORE, at the direction of the Atlantic County Prosecutor you are hereby notified to close your premises and desist from the further operation of the game at the aforementioned premises by no later than twelve o'clock noon of Saturday, June 16, 1951."
It is conceded that each of the games operated by the respective plaintiffs is similar to or a type of game known as bingo. The player, before participating in this game, purchases a checkerboard type of card for which he pays 25 cents for three cards and 50 cents for seven cards. The player may play any number of cards.
It is conceded that a large number of players participate in the games at one and the same time. Each game is played upon the checkerboard card on which there are five numbered squares in a straight line, either horizontally, vertically, or diagonally, and the numbers on each card vary and do not necessarily correspond with the numbers on any other card. Each card has a free square which is located in the center of the card and this free square is covered at the beginning of the game with a disk by each player. A player throws a ball into a square bin containing many numbered pockets, and *129 when the ball finally settles in one of these numbered pockets an attendant of the operator calls out this number and all those participating in the game, having such a number on the card or cards before him, play that number by placing a small disc over the same. After the selection of the first number, another one of the players similarly tosses the ball and a second number is selected and announced, and all the participating players having such a number on their card or cards again place a small disk over the same. This process continues until the game is won by one of the players who has first covered five numbers on any card played by him, either in a vertical, horizontal or diagonal line. The winner receives as a prize a coupon furnished by the operator which may be exchanged for a valuable prize or thing. The prize is announced prior to each game and depends upon the number of participants playing in the game. The value of the prize varies according to the number of cards purchased by the individual player.
Although the parties have conceded the court's jurisdiction, this court cannot acquire jurisdiction in such a manner. This court may have jurisdiction only if a question of law is involved. I have carefully considered the question of jurisdiction and have come to the conclusion that this court does have jurisdiction.
All of the respective plaintiffs have engaged in their respective businesses for several years or more in Atlantic City. The City of Atlantic City has issued mercantile licenses to each of the plaintiffs for a substantial fee. The plaintiffs and the City of Atlantic City have assumed that they were engaged in a lawful enterprise and were not violating the criminal laws of this State. Suddenly the plaintiffs were faced with a demand to close their premises or otherwise be prosecuted for violating the gambling laws of the State of New Jersey.
The plaintiffs are not obliged to assume the risk of arrest, fine and conviction before endeavoring to secure an adjudication of their rights. A doubt has arisen as to whether or not *130 the plaintiffs are engaged in a lawful business. In Blackman v. Iles, 4 N.J. 82 (1950), it was held:
"Declaratory Judgments Act is to be liberally construed and administered to carry out its purposes and intent."
In that case, there was some doubt as to whether or not the cause of action which the plaintiff desired to pursue was prohibited by statute. Justice Wachenfeld, speaking for the court, said:
"If the statute is applicable, the plaintiff would be placed in great jeopardy and subject to indictment and other legal embarrassments.
Under these circumstances, the plaintiff has a clear and unmistakable right to invoke the provisions of the Declaratory Judgments Act in order that her `rights, status or other legal relations' as affected by the statute may be determined. She is not obliged to assume the risk of prosecution, fine and imprisonment in endeavoring to secure an adjudication of her rights."
So, too, in the case at bar. Each of the plaintiffs is engaged in a business operation which might be prohibited by R.S. 2:135-1 and R.S. 2:135-3. If those statutes are applicable, each of the plaintiffs would be placed in great jeopardy and subject to indictment and other legal embarrassments.
In Empire Trust Co. v. Board of Commerce, &c., 124 N.J.L. 406, Justice Heher held:
"Moreover, the pleaded transactions, in substantial part at least, had ripened into a cause of action, if they could give rise to a right of action; and the Declaratory Judgments Act is designed to provide a remedy for the adjudication of justiciable rights, duties, status and other legal relations of the parties before rights had been invaded or wrongs committed, and its provisions are not ordinarily invocable where another adequate remedy is at hand. The declaratory judgment was intended to modify the common law rule that there is no justiciable controversy until a right has been invaded. It supplements, and is not a substitute for, existing remedies; and whether relief shall be afforded under its terms is ordinarily a matter resting in sound judicial discretion."
It is well settled if a plaintiff has other adequate remedies, the Declaratory Judgments Act would not be available. There are no other adequate remedies for these *131 plaintiffs. They seek to continue their present business operations but fear the risk of arrest, confiscation of their equipment and indictment. It may well be that the plaintiffs have an adequate remedy in the Superior Court. This remedy is not exclusive in the Superior Court, although generally exercised in a proceeding solely for injunctive relief. For example, this remedy would be available in the event the law enforcing authorities invaded the rights of these plaintiffs and sought to prohibit the operation of their respective businesses, without the due process of law. In that event, the Superior Court in the exercise of sound discretion, might well have restrained the authorities. See Miller v. Atlantic City, 111 N.J. Eq. 260 (Ch. 1932); S. and R. Amusement Corp. v. Quinn, 136 N.J. Eq. 420 (Ch. 1944). In those cases, the complainants filed a bill for an injunction and sought a permanent restraint against the local authorities, on the ground that their rights had been invaded without due process of law. The distinguishing feature is this: the plaintiffs in this case do not seek injunctive relief, but seek to have their rights, status or other legal relations determined. A justiciable controversy exists. The action here is a proceeding to determine the force and effect of the challenged provisions of the cited statutes and to determine the legality of the respective businesses of the plaintiffs. A declaration of legal rights may be had only in the court of law. Township of Ewing v. City of Trenton, 137 N.J. Eq. 109 (Ch. 1945).
In Abelson, Inc., v. State Board of Optometrists, 5 N.J. 412 (1950) the Supreme Court said:
"The action here is not in that category. It is a proceeding under the Declaratory Judgments Act to determine the constitutional force of the challenged provisions of the cited statute, and to restrain the threatened enforcement of such of them as may be found deficient. The validity and construction of a statute and rights, status or other legal relations thereunder are proper subjects of inquiry under this statute. R.S. 2:26-69.
There is no enlargement of jurisdiction over subject matter and parties. But there is provision for declaratory relief not obtainable under the preexisting practice and procedure. The remedy is available in certain cases where no other action would lie. All *132 courts of record are given power, within their respective jurisdictions, to declare rights, status and other legal relations, `whether or not further relief is or could be claimed.'"
It may also be observed in passing that the remedial power under the Declaratory Judgments Act is also equitable in nature. As was said in the case of Abelson, Inc., v. State Board of Optometrists, supra:
"This remedial power is equitable in nature, of a quality and breadth competent `to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations,' and thus to advance the administration of justice."
So much, then, for the jurisdiction of this court.
With regard to the question of whether or not the respective businesses of the plaintiffs are legal or illegal operations, it appears from the settled facts that the plaintiffs are engaged in an illegal business contrary to and in violation of R.S. 2:135-1 and R.S. 2:135-3. R.S. 2:135-1 provides as follows:
"All playing for money or other valuable thing at cards, dice or other game, with one or more die or dice, or with any other instrument, engine or device in the nature of dice, having one or more figure or figures, number or numbers, or at billiards, pool, tennis, bowls or shuffleboard, or A.B.C. or E.O. table, or other tables, or at faro bank, or other bank of a like nature by whatever name known, or with any slot machine or device in the nature of a slot machine, or with any other instrument, engine, apparatus or device having one or more figure or figures, number or numbers thereon, shall be guilty of a misdemeanor."
The pertinent part of R.S. 2:135-3 is "or for gambling in any form."
The plaintiffs contend that the statute, R.S. 2:135-1, is not applicable and refers to cards, dice or any other instrument, engine, or device in the nature of dice, and in addition to billiards, pool, tennis, bowls, or shuffleboard, or A.B.C. or E.O. table, faro bank, or other banks of like nature, and to any slot machine or device in the nature of a slot machine. *133 The statute specifically enumerates the games that are considered as gambling; that the games in question are not even remotely identified with the playing of cards or dice or with billiards, pool, tennis, bowls, or shuffleboard, etc. At first sight, this may appear to be so. However, the last portion of the statute provides: "or with any other instrument, engine, apparatus or device having one or more figure or figures, number or numbers thereon * * *." There is no doubt that the equipment used in the playing of these games may be considered as an instrument, apparatus, or device. The combination of cards purchased by a player and the bins into which the ball is thrown, is undoubtedly apparatus or a device by means of which a player may, by chance, win a valuable prize or thing.
If there is any doubt, and I have no such doubt, as to the applicability of R.S. 2:135-1, no question can arise as to R.S. 2:135-3. Although, in the main, it refers to book-making and pool selling, the provision "or for gambling in any form" is all-inclusive. It is clear and conclusive that gambling in any form is prohibited.
The plaintiffs contend that the court is not called upon to construe R.S. 2:135-3 because it is limited to the matters raised in the pleadings. There is no merit to this contention. (The pleadings are not limited to the construction of R.S. 2:135-1.) The plaintiffs seek by the action under the Declaratory Judgments Act a determination of the validity of the respective businesses operated by the plaintiffs. This requires an interpretation of the criminal laws of this State applicable to the issue raised. I find that R.S. 2:135-3 is pertinent to that issue and clearly applicable.
It is needless to reiterate the methods and manner in which these games are operated. Suffice it to say that each of the games operated by each of these plaintiffs is not a game of skill. It is obvious and clearly apparent that the games in question are purely games of chance. One player throws the ball into a bin containing numbered pockets, while all the other players await the announcement of the number of the *134 bin into which the ball has fallen. The first player who completes the combination of five numbers in a straight line, either vertical, horizontal, or diagonally, is declared the winner. No exercise of skill by the players is required. It is merely a matter of pure chance or luck.
Plaintiffs contend that the player who tosses the ball into the bin makes an effort to throw the ball into a numbered pocket, corresponding to a number on his card. This may be true, but 50 or more players exercising no skill whatever, enthusiastically or anxiously, as the case may be, await the outcome of that toss of the ball, hoping by chance the ball will fall into a numbered pocket corresponding to a number on the card played by one or more of those players.
The fact that each of these plaintiffs has a large investment and is responsible for the payment of rent under its respective lease; that they have large payrolls; that the city has issued them mercantile licenses and that they have been engaged in business for several years or more, is of no consequence. Unfortunate as the loss to the plaintiffs may be, nonetheless, each of these games is a violation of the cited gambling statutes.
The plaintiffs further contend that the giving of a prize does not make the games illegal. There is likewise no merit to this contention. R.S. 2:135-1 prohibits all playing for money or valuable thing. A prize is a valuable thing and may well consist of merchandise, or money, or for that matter, anything of value.
I have no hesitancy in determining that each of the games operated by the respective plaintiffs is a gambling operation and a violation of the cited criminal statutes.
Judgment for the defendant may be entered in accordance with this opinion.